## WHEELER *against* RAYMOND.

ON demurrer to the replication. The declaration was on two promissory notes, payee against maker, dated September 18th, 1820; one for $250, payable June 1st, after date, the other for $100, at 90 days. To these were added the usual money counts, and an *insimul computassent*.

Plea in abatement, that before the filing of the bill in this

conclusive against him, and shall have the same effect as a judgment in a court of general jurisdiction in this state.

It will, therefore, be conclusive against him, that the court of the neighboring state had jurisdiction under a statute of the state; the proceedings purporting to be under that statute. And he cannot question the jurisdiction of that court in pleading.

Precedent of a plea in abatement of a foreign attachment pending in a neighboring state. Note (a) at the end of the case.

Statute of a neighboring state pleaded. Id.

ALBANY,
Feb. 1828.

Wheeler
v.
Raymond.

cause, proceedings by foreign attachment were commenced *against the defendant under a statute of the State of Vermont, (setting out the statute,) in the county court of the county of Bennington, upon which the defendant was impleaded as garnishee or trustee in respect to the same demands set forth in the declaration in this suit, by one Johnson. That Johnson and Raymond, and Wheeler, (by his attorney,) appeared in the county court; but Wheeler afterwards made default. The proceedings alleged that Wheeler had secretly absconded from the state of Vermont, or was concealed within it, the only case in which the statute authorised the suit against his debtor. The plea further alleged that the county court gave judgment against Raymond as trustee of Wheeler, whose rights and credits Raymond had in his hands, to the amount of $292 10, the balance after allowing a set-off of $252 23. And such proceedings were had, that Raymond appealed to the supreme court of Vermont, where the suit was still pending at the time of the plea.

Replication, that the plaintiff was not, at the trial in the Bennington county court, nor at any other time, an absconding or concealed debtor, within the intent of the law of Vermont; nor was Johnson his creditor in manner and form as the plea stated; nor was Wheeler indebted to Raymond in $252 23, the sum allowed as a set-off.

General demurrer and joinder.

*Jas. Edwards*, in support of the demurrer. The plea is good in substance; and the plaintiff cannot, by his replication, put in issue the facts which have been adjudged against him in the state of Vermont. (19 John. 162. 7 Cranch, 481. 5 John. 101. 1 Salk. 280. 17 John. 284. 1 John. Dig. 489.)

*J. V. N. Yates*, contra. The adjudication in Vermont is not conclusive that Wheeler had departed or was concealed, one of which was essential to give the court in Vermont jurisdiction; and should have been averred in the plea expressly and directly; not left to inference. A de-

fect even in form, in a plea in abatement, may be taken advantage of on general demurrer. The plea professes *to set forth the whole proceedings; and an omission to show a full and particular compliance with the Vermont statute is fatal. The facts giving jurisdiction are material and issuable; and should be distinctly set forth. The same things are necessary in pleading, to give any foreign court jurisdiction, as are necessary to show jurisdiction in our domestic courts, having limited powers. Wheeler's appearing will not give jurisdiction. (1 John. Cas. 20. 9 John. 241. 3 Cain. 129. 7 John. 75. Co. Lit. 303, a. 303, b. Com. Dig. Abatement, (I. 15.) 1 Chit. Pl. 456.)

At any rate, we have a right to show, as we have done by the replication, that there was, in fact, no jurisdiction in the Vermont courts within the meaning of the statute of that state.

*Edwards*, in reply. There is enough in the plea, to show a compliance with the Vermont act. But Wheeler appeared; and we ask, will this court allow of an issue to try the very point that must have been tried in the state of Vermont? The question was there directly in issue, whether Wheeler was an absconding or concealed debtor; and the adjudication upon it must be taken to conclude here. Such is the import of the authorities cited for the defendant.

The objection that there is no direct averment showing jurisdiction, is, at most, an objection of form, which, it is conceded, may be taken advantage of by general demurrer when it exists in a plea in abatement. But here the plaintiff has replied. He cannot now make a mere formal objection.

*Curia, per* SAVAGE, Ch. J. The objection to this replication is, that it seeks to put in issue facts which have been adjudicated in the court in the state of Vermont. The first is, that the plaintiff was not an absconding or concealed debtor, within the meaning of the laws of Vermont; 2.

ALBANY,
Feb. 1828.

Wheeler
v.
Raymond

[*314]

That Johnson was not a creditor of the plaintiff *in this suit; 3. That the plaintiff was not indebted to the defendant, Raymond.

The replication does not deny the judgment in the state of Vermont. The plea was, that the plaintiff appeared in the court in Vermont by his attorney, and might have litigated in that court all the facts which he wishes to try now in this court. It also appears that Johnson had judgment for $781 76, which must be conclusive evidence that he was a creditor of Wheeler. It was also adjudged, that Raymond was trustee for Wheeler to the amount of $292 10; necessarily establishing the indebtedness of Wheeler to Raymond, to the difference between that sum and the amount of the notes. It is not adjudged in *totidem verbis*, that Wheeler was an absconding or concealed debtor; but that he was considered an absconding debtor, is proved, by the whole proceedings in the cause.

It is evident, therefore, that the replication is bad.

But it is said the plea is bad, in not averring that Wheeler was an absconding debtor, or that he secretly departed from the state of Vermont.

In pleading the judgments of courts of limited jurisdiction, it is necessary to state the facts upon which the jurisdiction of such courts is founded; but, with respect to courts of general jurisdiction, such averments are not necessary ; and if there was a want of jurisdiction, that fact should come from the other side. That fact may be replied in certain cases ; but it is now well settled, that the judgments of the courts in the several states, have the like effect in all the states, which they have in the state where the judgment is rendered; (7 Cranch, 484,) provided the defendant in the suit be served with process, or appear and defend. (15 John. 144.) By the record set forth in the plea, it appears that the present plaintiff did appear by his attorney, in the suit in Vermont. He is, therefore, concluded by the judgment in that court, equally as he would be by an adjudication in a court of this state. *and I am of opinion

[*315]

that the defendant is entitled to judgment upon the de- *ALBANY,*
murrer, with leave to the plaintiff to amend on payment of *Feb. 1828.*
costs.

<div align="right">

*Wheeler*
*v.*
*Raymond.*

</div>

Judgment for the defendant.(a)

(a) For the distinction, when a proceeding by foreign attachment will abate or bar a suit, see 4 Cowen, 521, note, and the cases there cited.

For forms of pleas in bar of a foreign attachment in London, see *Morris* v. *Ludlam*, (2 H. Bl. Rep. 362,) *Banks* v. *Self*, (5 Taunt. 234, note,) and *Tam* v. *Williams and another*, (2 Chit. Rep. 338, note (b,) where the pleas are given at length. See, also, as to the plea in bar, the late case of *Wetter and another* v. *Rucker and another*, 1 Brod. & Bing. 491. There is also an abstract of a plea in bar of a foreign attachment in Vermont, in *Prescott* v. *Hull*, 17 John. 284.

It will be useful to give the form of the plea of foreign attachment in abatement, in the principal case. It was as follows:

"And the said Samuel C. Raymond, by Samuel A. Foot, his attorney, comes and defends the wrong and injury, when, &c., and prays judgment of the said bill, because he says, that, before the exhibiting of the said bill, to wit, on the 18th day of September, A. D., 1820, and at the time of the making of the said supposed promises in the said plaintiff's declaration mentioned, and at the time of the commencement of this suit, he, the said Samuel C. Raymond and Moses Johnson, hereinafter named, were citizens and residents of the state of Vermont, to wit, at the city and county aforesaid. That before the making of the said several supposed promises in the said declaration mentioned, it was (by a public law of the said state of Vermont, passed the 31st day of October, 1797, entitled an act directing the proceedings against the trustees of concealed or absconding debtors,) enacted and declared, among other things, by the general assembly of the state of Vermont, being the legislature of the said state, that if any person or persons should have in his, her or their possession, any money, goods, chattels, rights or credits of any person who should have secretly absconded from the said state of Vermont, or who should keep concealed within the same, any creditor might cause such person or persons having such money, goods, chattels, rights or credits, to be summoned as trustee or trustees of such absconding or concealed debtor, by a process to be issued against him, her or them, according to the form in the said act prescribed, which process should be served on the trustee or trustees, and on the principal debtor, in the same manner as in cases of original writs; and that when the said trustee or trustees should appear, in his, her or their proper person or persons, at the court, such trustee or trustees should, if the plaintiff requested it, be put to answer interrogatories under oath, as to the money, goods and chattels, rights or credits of the principal debtor, in his, her or their possession, at any time before or since the service of such summons on him or them as aforesaid; and that it was further thereby enacted, that if the said trustee or trustees should appear at the court, and it should be made evident by his, her or their oath, or by other proof, that such trustee or trustees had money, goods, chattels, rights or credits of the said principal debtor, in his, her or their possession at the

*Statute of neighboring state pleaded.*

time of the service of such process, or at any time since, a record thereof should *be made, and the said trustee or trustees should be liable to the plaintiff for the money, goods and chattels, rights or credits so found in his, her or their hands or possession, to the value of the judgment recovered against the principal debtor, if so much there should be, and execution should issue on the judgment so recovered against the goods and chattels of the said principal debtor, in the possession of the said trustee or trustees, provided always, that the court, before which the said process or action should be brought, should allow the trustee or trustees to retain in his, her or their hands and possession, of the money, goods, chattels, rights or credits of such principal debtor, sufficient to indemnify such trustee or trustees for his, her or their reasonable costs, which should be taxed by the court, if there should be sufficient to satisfy the same.

And the said Samuel, further in fact, says, that the act so passed as last aforesaid, was in full force, and in nowise or degree repealed in the said state of Vermont, at the time of the making of the said supposed promises in the said declaration mentioned; but ever since hath continued to be, and still is in full force and operation in the said state of Vermont, and in every part thereof, and in no degree vacated or repealed. That, on the 11th day of January, A. D., 1821, Moses Johnson, hereinbefore named, according to the laws of the state of Vermont, under and by virtue of the said act, sued and prosecuted out of the county court of Bennington, in and for the county of Bennington, in the said state of Vermont, against the said defendant, then and still an inhabitant of, and residing in the county of Bennington and state of Vermont aforesaid, and then being trustee and debtor to the said plaintiff by means of the same identical premises set forth in his, the said Ephraim's declaration, and by no other means whatsoever, a certain writ directed to the sheriff of the county of Bennington, his deputy, or either constable of Manchester in the said county; and as no such officer could be seasonably had, to Trueman Purdy, an indifferent person, to serve and return; which said writ, signed by Joel Pratt, clerk of the said court, commanded such officer to summon Samuel C. Raymond, in said county, trustee of Ephraim Wheeler, of the state of New York, late of Manchester, an absconding or concealed debtor, if he should be found within the precincts of such officer, to appear before the county court next to be holden at Manchester, in and for the said county of Bennington, on the 1st day of June, 1821, and there, in the said court, to answer unto Moses Johnson aforesaid, upon the said Moses' declaration against the said Ephraim, in a plea of trespass on the case, and then and there averring in the said precept and declaration, that the said Samuel C. Raymond had in his possession moneys, goods, chattels, rights or credits of the said Ephraim Wheeler, to the amount of 2000 dollars; which said writ was, on the day and year last aforesaid, and before the commencement of this suit, duly served upon the said Samuel; by which said writ the said sheriff, his deputy, or other constable aforesaid, was required to leave a true and attested copy of the said writ, with his return of the doings thereon, at the last and usual place of abode of the said absconding or concealed debtor within the limits of the said state of Vermont, a copy of which said writ, with the return of Trueman Purdy, the person who

served the same, was left at the last usual place of abode of the said Ephriam, as required by the said writ, on the day and at the place last mentioned. And the said Samuel, in fact saith, that in the term of June, *A. D. 1821, of the said county court of Bennington, and at the return of the said writ, the said Moses Johnson came, by C. Sheldon, his attorney; and the said Samuel, trustee aforesaid, came, by M. L. Bunnell, his attorney, and day thereof was given, &c., until the December term of the said court, in the year last aforesaid, at which said December term of the said court, A. D. 1821, came the said Moses and the said Samuel, by their attorneys aforesaid, and the said debtor, Ephraim Wheeler, came by ——— Wellman, his attorney, and day thereof was further given, &c., to the term of June, A. D. 1822, of the said court. At which said June term of the said county court of Bennington, A. D. 1822, came the said Moses Johnson, by his said attorney, and the said debtor, Ephraim Wheeler, although three times solemnly called, came not, but made default thereof; and thereupon the said Moses Johnson gave the following specification, to wit:

<div style="margin-left:2em;">

Moses Johnson
   v.
Samuel C. Raymond, trustee to E. Wheeler,
Ephraim Wheeler to Moses Johnson, Dr.

</div>

| | | | |
|---|---|--:|--:|
| Feb'y, 1814. | To paying Read and Goodhue, | $225 | 99 |
| | Do. Charles Campbell for his fees, | 8 | 00 |
| | Do. Captain Bugham, | 22 | 00 |
| June, 1815. | Do. Read and Goodhue, | 436 | 83 |
| | Do. Thomas Roberston, | 30 | 15 |
| | Do. Charles Phelps, for rent of his store, | 17 | 86 |
| | | $740 | 83 |

Whereupon, it was thereupon then and there considered by the said court that the said Moses have and recover of the said Ephraim Wheeler, the sum of 781 dollars and 76 cents, and his costs in that behalf laid out and expended, then taxed at        dollars and        cents: and thereupon the said Samuel, trustee aforesaid, came by his said attorney, and in his own proper person, and on oath duly administered, made the following disclosure on the following interrogatories then administered, viz. Question by Moses Johnson: Have you or had you, at the time of the commencement of the above suit, any goods, chattels, rights and credits of, or belonging to Ephraim Wheeler, in your hands and possession? Answer by the said Samuel. On the 18th day of September, 1820, I think I executed to Ephraim Wheeler two notes of hand, of the same date, one for the sum of 100 dollars, payable at ninety days, and the other for 250 dollars, payable the 1st of June then next; the note for 100 dollars was, as I am informed, transferred by Wheeler to a man in Albany, who has since sued me as indorsee; and there has as yet been no trial on the other note. I have been sued to the supreme court of the state of New York by said Wheeler, and that suit is still depending; and I further disclose, that the said Ephraim was justly indebted to me at the time of the commencement of this suit, and still is, in the sum of 252 dollars and 73 cents, including interest to the first day of January, 1822, agreeably to the

<div style="text-align:right;">

Wheeler
v.
Raymond.

</div>

*318

schedule hereto annexed; which schedule is in the words following, that is to say:

*Mr. Ephraim Wheeler to Samuel Raymond, Dr.

| | | |
|---|---:|---:|
| To his note, dated Jan'y 20, 1818, made payable to James Borland, or order, and indorsed by said Borland, | $75 | 00 |
| To interest on the same to Jan'y 1st, 1822, | 18 | 55 |
| To his note, dated Nov. 18, 1816, made payable to Martin Roberts, or order, and indorsed to me, | 21 | 00 |
| To interest on the same, Jan'y 1st, 1822, | 7 | 53 |
| To his note, dated Nov. 18, 1816, made payable to Martin Roberts or order, and indorsed to me, | 16 | 00 |
| To interest on the same to Jan'y 19, 1822, | 5 | 72 |
| To two notes against Calvin Darling, dated Jan'y 4th, 1816, made payable to said E. Wheeler, which he, the said Wheeler, let me have for a note of about the same sum, which I purchased of Jonathan Roberts against the said Wheeler, agreed to pay me the amount, in case I did not collect it from Darling, | 14 | 39 |
| To interest on the same to Jan'y 1st, 1822, | 5 | 18 |
| To three notes, dated Jan'y 20, 1818, made payable to me, one for 24 dollars, and the others for 23 dollars each, | 71 | 00 |
| To interest on the same to Jan'y 1st, 1822, | 16 | 81 |
| To signing a citation and attending a court of jail delivery against Price Beardsly, Jan'y 20, 1816, | 1 | 25 |
| To interest on the same to Jan'y 1st, 1822, | 0 | 30 |
| | $252 | 73 |

1st question. Had you or had you not any notice of the transfer of the first note of $100 previous to the service of this writ, and was that note made negotiable? Answer. The note was not negotiable, and I had no notice of the transfer of said note, but the following, to wit: I was informed by Doctor Wing, this spring, that he held said note; and he also informed me, that he put a letter into the post-office upon the assignment of the demand to him, giving me notice of this fact, which letter I did not receive. I also received notice of this fact from M. Chade Southwick, I think soon after the note was given.

2d. Was the note of Ephraim Wheeler, to James Borland, absolutely transferred to you, before the commencement of this suit? or was it handed over and indorsed on condition that if allowed in your first suit at Albany, or in the arrangement thereof with Wheeler, then to be accounted for to said Borland, and if not, then to be returned to said Borland? and was the same allowed? and has not the same been demanded back again from you by said Borland, according to the original agreement? Answer. Said note was negotiable and indorsed to me by James Borland previous to the commencement of this suit, and if collected, I was to account to James Borland for the same; if not, I do not recollect what was to be done with it; and Wheeler had notice of this indorsement before this suit was commenced. It has not been collected or allowed to me, inasmuch as I have had no trial with Wheeler on the note which I am sued upon.

3d. When and what time were the notes of Martin Roberts, named in your schedule, transferred to you? Were they negotiable? Was the conveyance absolute or conditional? and on what terms and conditions were they transferred into your hands? Answer. I received said notes in the spring, *previous to the commencement of this suit. The notes were negotiable, and if allowed to me, I expect to settle with Martin Roberts to his satisfaction on the demand I had against him; and if not collected, I was not to account to him, and there was no other agreement or understanding upon the subject.

4th. Were the notes of Calvin Darling indorsed to you? Were they negotiable? What was the particular agreement relating to those notes? I do not recollect whether they were negotiable or not. They were not indorsed, I think; but Wheeler agreed, when I received them, if Darling did not pay, he would. I have got nothing of Darling, and he was good for nothing, and has run away.

Were any of the demands in your schedule handed or transferred on condition? If any, what ones, and on what conditions? Answer. On no further or other conditions than before stated.

Were there no other notes executed by you to Wheeler? and if so, on what tenor? Answer. There were none.

Whereupon it was then and there considered by the said court, upon the proofs and allegations of the said parties therein, that the said Samuel C. Raymond was trustee to the said Ephraim Wheeler, and had, in his hands, rights and credits to the amount of 292 dollars and 10 cents, out of which sum the said Samuel should be allowed his costs in that behalf laid out and expended, and then taxed at $ and cents.

And thereupon, afterwards, such proceedings were had in such suit aforesaid, that the said Samuel appealed from the said judgment of the said county court, to the supreme court of the said state of Vermont; and the said cause was duly entered in the said supreme court. And the said Samuel further in fact saith, that the parties in this and the said suit in the said courts in the state of Vermont, to wit, the said Samuel and the said Ephraim are the same and not other or different. And the said Samuel further in fact saith, that all and every of the causes and rights of action contained and specified in the said plaintiff's declaration in this suit, which were, or at any time heretofore have been in the plaintiff in this suit, are the same identical causes and rights of action, on account of, and by reason of which only, the said Samuel was proved, considered and adjudged to be trustee to the said Ephraim, and to have in his hands credits to the amount of 292 dollars 10 cents, in the said suit before the said county court of Bennington aforesaid, and were the very point and subject of the controversy, proofs, trial, and judgment, and appeal in the last aforesaid suit. And that the said former suit so brought and prosecuted against him, the said Samuel, by the said Moses, as aforesaid, is still depending in the said supreme court of Vermont, before the judges thereof. And this he the said Samuel is ready to verify; wherefore he prays judgment of the said bill in this suit; and that the same may be quashed."