# THE CHEMUNG CANAL BANK *against* JUDSON

The jurisdiction of any court exercising authority over a subject may be enquired into in any court where the proceedings of the former are brought by a party claiming the benefit of them.

The district courts of the United States are not courts of inferior jurisdiction in the sense that renders it necessary to show their jurisdiction on the face of their records. If jurisdiction do not appear on the face of their proceedings, their judgments may be reversed on writ of error, but they are not nullities which in a collateral suit may be disregarded. In such a suit their jurisdiction is presumed until the contrary is shown.

The jurisdiction of the district court over the person of one decreed a bankrupt will be presumed although the decree does not show affirmatively that the court had acquired jurisdiction.

The district court had under the bankrupt act, jurisdiction in all matters and proceedings arising under it, and of all suits in law or equity to be brought by an assignee of the bankrupt and any persons claiming any adverse interest. It might entertain a proceeding in equity by the assignee although an action at law could have been maintained upon the case made.

The saving clause contained in the act repealing the bankrupt act extended to all the proceedings necessary to consummate the relief intended by the provisions of the act repealed, until the final distribution and settlement of the bankrupt's estate, in any case commenced previous to the repeal.

By the repeal of the bankrupt act, the jurisdiction of the district courts to entertain a plenary suit in equity commenced by bill of complaint in matters relating to a case in bankruptcy was taken away, but the power to entertain summary proceedings on petition in a case commenced previous to the repeal was retained. Under the latter power a district court might dismiss a bill of complaint, and direct that it be retained as a petition, and further proceedings be had thereupon.

Where the parties to a proceeding in bankruptcy had a defence in the nature of a statute of limitations, which they should have set up in the proceeding but did not, the matter can not be here shown against the decree made in such proceeding.

Where a party has appeared in an action, and a decree has been made reciting his appearance at the hearing, he can not in another action object to the recital. If he did not appear at the hearing he should by motion have the recital corrected.

In this action where one was declared a bankrupt under the bankrupt act of 1841, and the assignee in bankruptcy after its repeal filed his bill in equity in the district court against fraudulent assignees of the bankrupt and persons

having the proceeds of the fraudulent assignments, which bill was by the district court dismissed *as a bill*, but retained as *a petition* and proceedings and a decree subsequently had thereon, it was held that the decree was valid. JEWETT, J., *dissenting*.

This was an action of trespass brought to recover the sum of $6796·63 levied upon moneys of the plaintiff, by virtue of an execution issuing from the district court of the United States, for the northern district of New York, upon a decree made by that court. The defendant justified the levy. The cause was tried at the Chemung Circuit in September 1848, before Mr. Justice Mason, without a jury, and a judgment and rendered in favor of the plaintiff which upon appeal to the general term held in the sixth judicial district was affirmed. The defendant appealed to this court.

The following facts appeared:

On and prior to February 7, 1842, Daniel A. Towner and Edward Suffern were doing business in partnership as merchants, at Elmira, in Chemung county, and had become insolvent. On that day Towner assigned all his interest in the partnership to Suffern, and on the next day Suffern made a general assignment of all his effects, and of the affects of the firm, to Benjamin A. Towner and William Birdsall, for the benefit of creditors. The assignment preferred certain creditors, and among others, the Chemung Canal Bank, the plaintiff in this action. The voluntary assignees collected the assets and paid over several thousand dollars to the Chemung Canal Bank, in pursuance of the trusts expressed in the assignment. On the 18th of August, 1842, Stephen Ray, a creditor of the firm of Towner and Suffern, presented his petition to the district court of the United States for the northern district of New York, charging Towner and Suffern with having been guilty of an act of bankruptcy, and praying to have them declared bankrupts. Upon the petition a decree of bankruptcy was made against them on the 19th of September, 1842, and Mordecai Ogden was subsequently ap-

pointed their assignee in bankruptcy. In the petition and order, and the notice and to show cause, Towner and Suffern were described as "Daniel A. Towner and Edward Suffern, *now or late* of Elmira, in the county of Chemung, in the northern district of New York," but in the decree they were described as "of Elmira, Chemung county."

On the 6th of February, 1843, Ogden, as assignee in bankruptcy, presented the district court a petition, setting forth the proceedings and decree in bankruptcy against Towner and Suffern: the voluntary assignment of Daniel A. Towner to Towner and Birdsall, and that the latter had collected large sums of money under it, and paid them to the Chemung Canal Bank: alleging such assignment to have been a fraud upon the bankrupt act, and praying to have it declared void, and that the assignees Towner and Birdsall and the Chemung Canal Bank might, by decree, be compelled to account for and pay over to the petitioner the moneys collected and paid upon the assignment. Copies of the petition were served upon the Chemung Canal Bank and upon Towner and Birdsall, and they severally appeared and put in answers. Upon the final hearing, an order was made on the 14th day of March, 1843, denying the prayer of the petition, and dismissing it, with leave to the assignees under the voluntary assignment, and to the Chemung Canal Bank, to apply for their costs, to be paid from the fund in court, or in the hands of the assignee in bankruptcy. On the 3d of March, 1843, the bankrupt law was repealed, the repealing act containing a saving clause by which it was provided "that this act shall not affect any case or proceeding in bankruptcy commenced before the passage of this act, or any pains, penalties or forfeitures incurred under the said act, but every such proceeding may be continued to its final consummation, in like manner as if this act had not been passed."

On the 8th of April, 1844, more than a year after the repeal of the bankrupt act, Ogden, the assignee in bankruptcy, filed his bill in equity in the district court of the

The Chemung Canal Bank *against* Judson.

United States against Towner and Birdsall, the voluntary assignees, and the Chemung Canal Bank, in order to set aside the voluntary assignments of Towner and Suffern of the 7th and 8th of February, 1842, and to reach the property and funds in Towner and Birdsall's hands, and the moneys paid by them to the Chemung Canal Bank.

The Chemung Canal Bank appeared and demurred to the bill, assigning, amongst other causes of demurrer,

" That the said district court of the United States for the northern district of New York had no jurisdiction as a court of equity, and can not take cognizance as a court of equity, of the matters set forth in said complainant's said bill of complaint, or grant the relief prayed for.

"And also for that, the said act of Congress entitled 'An act to establish an uniform system of bankruptcy throughout the United States,' passed August 19th, 1841, was, prior to the filing of the said bill, or the commencement of proceedings in this cause, repealed."

The said cause was brought to a hearing upon the bill and demurrer before the district court in October, 1845, when the court made a decree in the said cause, containing, among other things, the following clause:

" This court doth order, adjudge and decree, that the aforesaid amended bill in equity, be dismissed as a bill; and that the complainant pay to the defendants, respectively their costs to be taxed, after service of a copy of a bill of costs taxed after due notice of taxation. But nevertheless, in order to avoid a possible defeat of the ends of justice, this court doth at the same time order and decree, that although the said amended bill be dismissed as a bill, it may and shall be retained and regarded as a petition, with the same effect from the time when it was filed, as if it had been in form a petition, instead of a bill in equity; and that the further proceedings on said amended bill or petition, may and shall be conducted in a summary manner."

SEL. IV.—33

The Chemung Canal Bank moved to correct this order, but the motion was denied.

The cause proceeded upon the petition, and on the 16th of November, 1846, an interlocutory decree was made thereon, setting aside the two assignments of the 7th and 8th of February, 1842, as fraudulent and void, awarding the property which the said assignees, Towner and Birdsall had received under them to the petitioner, Ogden, the assignee in bankruptcy, and decreeing the Chemung Canal Bank liable for all moneys which they had received from the said assignees under and by virtue of the assignment; and directing an order of reference to a master, to ascertain how much money had been paid to the Chemung Canal Bank under the assignment. Subsequently, Ogden, the assignee in bankruptcy, died, and on the 29th of March, 1847, William R. Judson, the defendant in this action, was appointed assignee in bankruptcy in his place, and the proceedings on the petition were revived in his name. The matter was heard upon the master's report, and on the 7th of June, 1847, a final decree was made by the district court against the Chemung Canal Bank for $6,191·74 damages and the costs of the suit, and awarding execution thereon. Upon this execution the amount decreed was levied upon the money of the plaintiff.

*S. Blatchford* for appellant.

*D. Wright* for respondents.

RUGGLES, J., delivered the opinion of the court: This was an action of trespass to recover of the defendant the sum of $6796·63 taken by the defendant in money from the plaintiffs.

The defendant justifies by virtue of a decree in his favor against the plaintiff obtained in the district court of the United States for the northern district of New York, and an execution thereon by which the money was taken.

The Chemung Canal Bank *against* Judson.

On the part of the plaintiff it is insisted, that the decree of the district court of the United States was null and void for want of jurisdiction in that court to make it: and this is the question to be determined here.

The first ground taken against the validity of the decree of the district court, is, that the bankrupt act gives jurisdiction in such cases only to the district court of that district in which the bankrupt resided at the time when the petition of bankruptcy is filed; that the petition of the creditor Wray did not allege that the bankrupts were residents of the northern district of New York, at the time the petition was filed; and therefore, that the district court never obtained jurisdiction of the proceedings in bankruptcy, for the purpose of making the decree, or of entertaining the proceedings founded on it.

There is no doubt of the power and duty of this court to inquire into the question whether the district court of the United States had jurisdiction. In *Elliott* v. *Piersol*, (1 *Peters*, 328, 340,) the rule is well declared that " when a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a recovery sought (even prior to a reversal) in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences are considered in law as trespassers. This distinction runs through all the cases on the subject; and it proves that the jurisdiction of any court exercising authority over a subject may be inquired into in every court where the proceedings of the former are relied on, and brought before the latter by the party claiming the benefit of such proceedings."

The power of this court, therefore, to inquire into the jurisdiction of the district court of the United States is

undoubted; and the power of that court to inquire into the jurisdiction of this, is equally clear. The difficulty lies in determining by what rules the inquiry is to be conducted, and by what principles the question is to be adjudged.

The point taken by the plaintiff is founded on the assumption that the authority of the district court to hear and determine, must appear on the face of its proceedings. This assumption is erroneous. The authority of inferior courts and magistrates must be shown, while the authority of the higher tribunals of general jurisdiction is presumed until the contrary appears. In (*Peacock* v. *Bell*, (1 *Saun.* 73,) it was said that the rule for jurisdiction is that nothing shall be intended to be out of the jurisdiction of a superior court but that which specially appears to be so; and on the contrary, nothing shall be intended to be within the jurisdiction of an inferior court but that which is so expressly alleged. The same principle is acknowledged in 9 *Johns.* 407, *Yates* v. *Lansing*, in the opinion of Clinton Senator in these words: "An inferior court shall, when questioned, show that it acted within its jurisdiction; whereas, in courts of general jurisdiction, jurisdiction is presumed until the contrary be shown.

In *Foot* v. *Stevens*, (17 *Wend.* 483,) and in *Hart* v. *Seixas*, (21 *Wend.* 40,) this doctrine is reiterated and defended by reference to authorities which leave no doubt on the subject. The question arose in most of the cases upon writs of error, and the presumption in favor of the jurisdiction of the courts whose proceedings were under review, was held to be applicable even there, and the judgments were affirmed on the ground that the omission to show jurisdiction was not error. Here the question comes up in a collateral action, in which case it is incumbent on the party impeaching the proceedings to show not merely that the judgment was erroneous, but that it was absolutely void.

The district court of the United States is not an inferior court of limited jurisdiction, in the sense that renders it

necessary to show its jurisdiction on the face of its records This has been settled not only by the supreme court of the United States in 10 *Wheaton*, 192, *McCormick* v. *Sullivant;* 3 *Peters*, 193, *ex parte Watkins*, and several other cases; but in this court, in *Ruckman* v. *Cowell*, (1 *Comst.* 307.) In the latter case it was declared that the district and circuit courts, although of limited jurisdiction, are not inferior courts, in the technical sense of the term. If jurisdiction do not appear on the face of their proceedings, their judgments or decrees will be reversed on error or appeal; but they are not nullities which may be disregarded in a collateral proceeding. In this respect the district and circuit courts of the United States stand on the same footing as courts of general jurisdiction; and the authority of such courts is always to be presumed until the contrary is shown.

Moreover, the first section of the bankrupt act declares that all decrees in bankruptcy passed by the district court, and not reexamined before a jury according to the provisions of that section, shall be deemed final and conclusive as to the subject matter thereof. The bankrupts are described in the decree in question as "of Elmira, Chemung county," which is within the northern district of New York. The case, therefore, as respects this point, is brought directly within the decision in *Ruckman* v. *Cowell.* If, however, there should be any ground for saying that the decree, although final and conclusive as to the subject matter, is not so as to the jurisdiction of the persons of the bankrupts, the cases of *Foot* v. *Stevens, and Hart* v. *Seixas*, are an answer to the objection. It was there distinctly held that where the record of a superior court did not show affirmatively that it had acquired jurisdiction of the person, that fact would be presumed.

The decree of the district court can not, therefore, be treated as a nullity for want of jurisdiction to make the decree in bankruptcy.

The jurisdiction of the district court was not impeached

by showing that the bankrupts were not residents within the district. There was neither pleading nor proof of their nonresidence. The presumption, therefore, is, that they were residents, and that the decree was made on competent authority. (8 *Cow.* 311, 314; 4 *Cow.* 292; 5 *Wend.* 148.)

In regard to the further objections, that the district court had no jurisdiction of the proceedings in favor of the assignee in bankruptcy against the bank, for the reason that there was a remedy at law in the particular case; or that a discovery could not be rightfully enforced; they may be disposed of in a few words. The 6th section of the bankrupt act gives to the district court jurisdiction in all matters and proceedings in bankruptcy arising under that act, to be exercised summarily in the nature of summary proceedings in equity; and declares that this jurisdiction shall extend to all cases, and controversies between the bankrupt and his creditors, or between the creditors and the assignee; *and to all acts, matters and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy.* And the 8th section confers upon the district and circuit courts concurrent jurisdiction of all suits in law and equity which may and shall be brought by any assignee of the bankrupt against any person or persons claiming an adverse interest, touching any property or rights of property of said bankrupt transferrable to or vested in such assignee.

Without reference to any authority on the subject, it is obvious that these sections of the statute conferred on the district court jurisdiction of the subject matter of the controversy between the assignee and the Chemung Canal Bank, in relation to the money received by the latter, under the previous voluntary assignment alleged to have been made in fraud of the bankrupt act.

The plaintiff now claims that the decree of the district court should be treated as a nullity, because (although it

had jurisdiction to hear and determine,) it administered the remedy in an unauthorized form. But a court having jurisdiction to hear and determine either at law or in equity, must of necessity have the power of determining in which form the remedy shall be administered; and an error in judgment on that point can not be alleged as a defect of jurisdiction. A decree of the court of chancery might be reversed by an appellate court on the ground that *there* was a plain and adequate remedy at law; but such a decree could not on that ground be treated as a nullity in a collateral action. But we think the proceeding was clearly one of equity jurisdiction. The object of it was to set aside the voluntary assignment made previous to the petition in bankruptcy, and to call the voluntary assignees and the plaintiff to account for what they had received in fraud of the bankruptcy.

The case *Ex parte Christy*, (3 *Howard*, 292,) is in point to sustain the jurisdictio.. of the district court to hear and determine the controversy between the assignee in bankruptcy and the Chemung Canal Bank.

In Christy's case, the controversy was between the assignee in bankruptcy and creditors claiming an adverse interest in the property in dispute, under a previous conveyance from the bankrupt. In the district court whose proceedings we are examining, the same question of jurisdiction arose in the same way; that is to say, between the assignee in bankruptcy and the Chemung Canal Bank, claiming an adverse interest in the property, under a voluntary assignment from the bankrupts before the filing of the petition in bankruptcy.

The question arose in Christy's case on a motion in behalf of the adverse creditor for a writ of prohibition to a decree against him. The supreme court of the United States decided: First, that the district court had jurisdiction; and Secondly, that its jurisdiction was derived from the 6th section of the bankrupt act, and from that clause of it which extends the authority of the district court " to all

acts matters and things to be done under and in virtue of the bankruptcy until the final distribution and settlement of the estate of the bankrupt and the close of the proceedings in bankruptcy."

Under this decision, therefore, the proceedings were properly in equity, whether the assignee might or might not have brought an action at law either in that or the circuit court.

But it is suggested that this court may and ought to disregard the opinion of the supreme court of the United States, upon the construction of the bankrupt act, and to look at the question as unsettled, because the supreme court had, according to their own opinion, no authority to issue the writ of prohibition, even if the district court had exceeded or was about to go beyond its jurisdiction.

But, I think, the opinion must be regarded as authority. The writ of prohibition was denied on two grounds. First, because the district court was right in assuming jurisdiction; and Secondly because the supreme court was not authorized to issue a writ of prohibition to the district court except in an admiralty case. Either of these grounds was sufficient without the other, for the denial of the writ. Having settled the question upon the construction of the bankrupt act it was necessary to decide the question of its own jurisdiction to issue the prohibition. The decision, if it settles the law on either question settles it on both. And it ought here to be observed that the dissenting judge expressed no opinion adverse to that of the court, on the construction of the bankrupt law with respect to the questions which arise in the case now before this court. He denied the power of the district judge to retry questions which had been adjudged between the bankrupt and his creditors before the bankruptcy, in regard to liens on the bankrupt's estate acquired under the local state law. The grounds of his dissent, as expressed in Judge Baldwin's opinion in the case of *Kerlin*, 3 *How.* 326, do not affect the questions arising in the present case.

The Chemung Canal Bank *against* Judson. .

The authority of the case *ex parte Christy* has, moreover, been affirmed by the supreme court, so far at least as it is applicable to the present case, in the subsequent cases of *Norton* v. *Boyd*, (3 *Howard*, 426,) and *Houston* v. *the City Bank of New Orleans*, (6 *Howard*, 486.) It is unnecessary to refer to other cases on this point.

The more important, and the more difficult question, if it were now for the first time to be considered, is whether the repeal of the bankrupt act on the 3d of March, 1843, did not deprive the district court of its authority to hear and determine the controversy between the assignee and the bank. The bill, which was afterwards transformed by the order of the district court into a petition, was not filed until April, 1844, which was more than a year after the repeal. The order retaining the bill as a petition was substantially an order of amendment, which the district court, having jurisdiction to hear and determine the controversy, had the power to make.

Without the saving clause in the repealing act, the power of the court was clearly at an end before the bill was filed. The saving clause is as follows.

" Provided that this act shall not affect *any case* or proceeding in bankruptcy commenced before the passage of this act, or any pains, penalties or forfeitures incurred under the said act but every such proceeding may be continued to its final consummation in like manner as if this act had not been passed."

The repealing act put an end to the jurisdiction of the district court under the bankrupt act; except in regard to matters. coming within the saving clause, and the proper object of inquiry is, therefore, whether the proceedings by the assignee against the bank were part of the case or proceeding in bankruptcy within that clause.

What, then, constitutes the case in bankruptcy? Suppose a petition presented and an order to show cause made before the repeal of the statute; the decree in bankruptcy, the appointment of the assignee, and the granting or

SEL. IV.—34

refusing of the bankrupt's discharge, are all in the direct
line of the proceedings, part of the case in bankruptcy
commenced before the passage of the repealing act. These
acts relate immediately to the debtor, and are for his bene-
fit.   But the creditors were not less objects of regard of
the bankrupt act than the debtor.  The power of removing
the assignee for cause shown, and of appointing another,
and the collection and distribution of the assets, were
equally parts of the case.   That was the main object of
the statute so far as regarded the creditors, and the case
was not consummated until that was done.   The original
proceeding against Towner and Suffern was at the instance
of one of their creditors.   Their object and motive was to
reach the property of the bankrupt, (supposed to have been
fraudulently assigned,) by means of the remedies provided
by the bankrupt act; and it would have been an extraor-
dinary exercise of power by congress to take away these
remedies after the creditors had obtained the decree in
bankruptcy and the bankrupt had assigned his property,
and before its final consummation by a collection and
distribution of the assets. The saving clause in the repeal-
ing act was evidently designed to avoid that result.   It is
true that the debts due to the bankrupt's estate might
have been collected in the state courts; but that could
properly be done by the assignee only under the direction
of the district court; and the state courts have no author-
ity whatever to order a distribution among the creditors,
or to settle the rights of the creditors between each other
under the bankrupt act.

In *ex parte Christy*, (3 *Howard*, 312,) Story, J., says: "The
obvious design of the bankrupt act was to secure a prompt
and effectual administration and settlement of the estate
of the bankrupt within a limited period.  For this purpose
it was indispensable that an entire system, adequate to that
end, should be provided by congress, capable of being
worked out through the instrumentality of its own courts,
independently of all aid and assistance from any other

tribunals over which it could exercise no effectual control;" and after adverting to several of the provisions of the act he proceeds: "From this brief review of these enactments, it is manifest that the purposes so essential to the just operation of the bankrupt system could scarcely be accomplished, except by clothing the courts of the United States acting in bankruptcy, with the most ample powers and jurisdiction to accomplish them; and it would be matter of extreme surprise if, when congress had required the end, they should at the same time have withheld the means by which alone it could be successfully reached." And accordingly the jurisdiction conferred by the district court is declared by the 6th section of the act " to extend to all acts, matters and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt and the close of the proceedings in bankruptcy."

The jurisdiction thus conferred is equitable and summary; and according to the fair construction of this clause, and the interpretation put upon it in Christie's case, must be regarded as belonging to and part of the case in bankruptcy. It is part of the machinery by which a case commenced by petition in bankruptcy is carried out and continued to its final consummation; that consummation being the final distribution of the bankrupt's estate among his creditors.

The power of collecting the assets is incidental and indispensable to the power of distributing the bankrupt's estate among the creditors, and these powers are vested in the district court setting in bankruptcy, and if the final distribution be a part of the case, as it undoubtedly is, the collection of the assets by summary proceedings *in equity* must also be a part of it, and therefore within the saving clause.

The formal bill in equity filed by Ogden, the assignee, against the bank and others on the 8th of April, 1844, and

amended on the 10th of June in that year, was filed in pursuance of the 8th section of the bankrupt act. This was not filed in the district court as a court sitting in bankruptcy. It might have been filed in the circuit court. If the proceedings on this bill had been carried out to a decree in favor of the assignee, the decree might have been reversed in the circuit court, and the decision of that court was also examinable in the supreme court.

This was done in the case of *Shawhan* v. *Wherritt*. (7 *Howard*, 627.) But the decree of the district court sitting in bankruptcy, made in the exercise of summary jurisdiction in equity under the 6th section, is not so examinable. (1 *Howard*, 265, *ex parte Nelson*.)

If I understand the effect of these decisions, the power to hear and determine the case made by this formal and plenary bill, was taken away by the repeal of the bankrupt act; it not being within the scope of the saving clause. Although it related to the bankruptcy, it was not part of the case in bankruptcy pending at the time of the repeal. It might have been filed in the circuit court under section eight. That court has no power to sit in bankruptcy except upon questions adjourned into it by the district court under section six. The district court, in relation to a formal and plenary bill, had before the repeal concurrent and similar authority with the circuit, which is to hear and determine the case, but not as a court sitting in bankruptcy. But the district court having no general equity jurisdiction, its authority to take cognizance of such a case ceased when the bankrupt act was repealed. The bill, therefore, was properly dismissed as such, not only for the reason stated in the order of the 13th of October, 1845, but for the further reason that the district court had no jurisdiction, after the repeal of the bankrupt act, to entertain it.

But its jurisdiction in bankruptcy to hear and deter-

mine the controversy by summary proceedings remained The parties were in court, and I can perceive no valid objection available in a collateral action to that part of the order by which the court retained the paper as a petition, and directed the further proceedings to be had thereon in a summary way. That part of the order, however, which purports to give effect to the bill as a petition from the time when it was filed, must be regarded as inoperative; and the petition must be regarded as filed on the day of making the order. This was more than two years after the decree in bankruptcy, and as appears by the bill or petition, more than two years after the cause of suit first accrued. If this, under the provisions contained in the eighth section of the bankrupt act, constituted a defence, it should have been set up in answer to the petition, as a statute of limitation. It did not go to the jurisdiction of the court.

The decree of the 14th of November, 1846, upon the hearing of the matter of the petition, recites the appearance of the Chemung Canal Bank at the hearing. If parol evidence was admissible to contradict the record in this particular, the evidence taken together was insufficient.

Mr. Wright, the counsel for the bank, did not appear at the hearing, but he did appear at the time of the settlement of the decree, and proposed amendments. It was not shown that he objected to the recital of his appearance, or to the want of notice of the hearing.

If, in point of fact, the decree had been irregularly taken against the bank by default, the appropriate remedy was by motion to set it aside. The proposal of amendments must and ought to be regarded, in reference to the point now in question, as an admission of the regularity of the notice, or a waiver of the irregularity. It certainly affords a sufficient presumption of the regularity to uphold the validity of the decree when questioned for this cause in a collateral action.

On the whole, therefore, I am of opinion that the decree of the district court was a defence against the action brought by the bank, and that the judgment of the supreme court should be reversed, and a new trial awarded.

RUGGLES, Ch. J., GARDINER, JOHNSON, WILLARD, TAGGART and MORSE, concurred.

JEWETT, J., was in favor of an affirmance of the judgment of the supreme court, on the ground that the district court had no power to dismiss the bill of complaint as a plenary bill in equity, and then convert it into a petition under the proceedings in bankruptcy.

MASON, J., was not present at the decision.

Judgment affirmed.