EDWARD SIMON AND OTHERS, PLAINTIFFS, v. CLEOPHAS HUOT AND OTHERS, DEFENDANTS.

*Promissory note — Garnishment process — effect of on rights of bona fide purchaser:*

The laws of Florida provide that in any action commenced therein a notice of garnishment may be issued to any person indebted to the defendant in said action, requiring him to state the amount of his indebtedness at the time of the issuing of the summons, and authorize a judgment to be entered in favor of the plaintiff for the amount of such indebtedness, if it be admitted, and an execution to be issued thereon. *Held,* that these provisions included all debts without regard to the form in which they were contracted, and that they were applicable to negotiable paper.

Accordingly where, in an action upon a promissory note, made and payable in that State, brought by one who had purchased the same in this State, without notice and for full value, it appeared that while the payee still owned the note an action had been commenced against him, in which, after due service of notice of garnishment on the makers, judgment had been entered against them for the amount thereof, and their property had been seized under an execution issued thereon, *held,* that the court erred in directing a verdict for the plaintiff.

MOTION by defendants for a new trial, on exceptions ordered to be heard in the first instance at the General Term.

*B. F. Watson,* for the plaintiffs.

*John Ewing Wrisley,* for the defendants.

DANIELS, J. :

The plaintiffs as the indorsees, for value without notice, of a promissory note, were allowed to recover the amount due upon it at the trial, by the direction of the court, and the exceptions taken to that direction, and to the refusal to direct a verdict for the defendants, were ordered to be first heard at the General Term, and judgment in the mean time was suspended. The note was made by the defendants who were then residents and citizens of the State of Florida, on the 8th day of September, 1873, and by its terms they promised to pay to the order of Louis Sylvester $1,655.97, at their office for value received, in twelve months after

date. The plaintiffs received the note from the payee properly indorsed by him, on the 9th of June, 1874, for the purchase-price of goods sold and delivered by them to him, and amounting to the sum unpaid by its terms.

Both the complaint and the answer of the defendants averred that the note was made by them, and delivered to Sylvester, the payee, at Fernandina, in Florida, and it was payable at the defendant's office in that place. After the making and delivery of the note and on the 3d of March, 1874, an action was commenced by Charles R. Ely and others against Sylvester, the payee, in the Circuit Court of the fourth judicial circuit of that State, for the recovery of a debt claimed to be owing from him to them. The court had jurisdiction over the action and the summons in it was served personally on the defendant on the next day. At the time of the commencement of the suit, upon a proper affidavit and bond, an application was made for an attachment against the debtor, and a writ of garnishment against Huot, Kelly & Co., the present defendants, as persons who had property, money and effects in their hands belonging to Sylvester, the debtor. That writ, as well as the attachment, were issued, and the writ was served on these defendants on the 3d of March, 1874, the day on which it issued. They appeared, as it required them to do, and filed their answer in which, among other things, they set forth the making and delivery of the note in suit, and stated that it was then still held by Sylvester, which appears to have been the fact. The action proceeded to judgment against Sylvester on the 16th day of May, 1874, and against the makers of the note on the 29th of October, 1874. By the judgment against them they were adjudged liable to pay the plaintiffs in that action the sum of $1,762.06, besides five dollars and fifty cents costs, and that payment was required from them, by reason of their liability to Sylvester, upon the note received by the plaintiffs, for the other note made by them was shown to have passed out of his hands before the proceedings against them were instituted. Upon this judgment execution was issued on the 3d of December, 1874, and levied upon the defendants' goods. But at their instance the goods were released, and a levy made upon real estate owned by them in lieu of the goods, and the proceedings remained in that condition when this action was tried, it having been commenced in October, 1874. The court

held that these proceedings, although taken in conformity to the statute of Florida, constituted no defense to the plaintiffs' action upon the note; and whether it was right in that position is the important point now required to be considered and decided by this court.

As the note was made and delivered, and was also payable in Florida, its effect as a contract depended, as far as they had been enacted upon the subject, on the laws of that State. And by those laws, as they were proved upon the trial and appear in the case, any person indebted to a defendant proceeded against was rendered liable to be summoned to appear and state on oath, in writing, whether he, she or they were indebted to the defendant, and in what sum, at the time of the service of the summons. And when the garnishee confessed the indebtedness, as that was done by the answer filed by the defendants, then it was provided that if the plaintiff should be "satisfied with the statement, admission, confession, or discovery, the court shall ·award judgment against said garnishee for the amount so confessed, and execution may issue for the same against said garnishee." These provisions included all debts, without reference to the form in which they were contracted, and for that reason were applicable to the note in suit. It was sufficient for the application of the statute, that the party proceeded against was in fact indebted to the defendant in the action, at the time when the proceedings were taken, and how the debt was created or by what instrument it may have been evidenced, was, therefore, not an important consideration. The liability depended on the existence of a debt, not on the form of the obligation taken for it. And for that reason to that extent it necessarily qualified the negotiability of commercial paper made and delivered within the State of Florida, and rendered the debt for which it should be given liable to be applied in payment of debts against the holder, as long as the paper continued in his hands as his property. It was not relieved from that liability by the circumstance that it was not due, and might afterwards be negotiated by the holder having possession of it, to an innocent purchaser. That was a contingency for which no provision was made by the statute. The right of the creditor to have it appropriated to his payment was made complete, by reason of the circumstance that the debt was owing to the debtor; upon that the statute intervened for the protection of the

creditor, and rendered his right to sequestrate the debt absolute. It looked no further, and did not undertake to guard against the ulterior consequences which might have been expected to arise from a subsequent unauthorized negotiation of the paper. Legislation of this general nature affecting the negotiable qualities of commercial paper is not uncommon, and to some extent it has been enacted in this State, rendering such paper void in the hands of even innocent holders, when made in contravention of its provisions. That is the case as to betting, gaming, usurious and other transactions forbidden by law.

The holder of the note though shown to reside beyond the limits of the State was actually within it, and so was the note, when the action against him was commenced, and the process issued for that purpose was personally served upon him. By that service, and the service of the summons upon the present defendants, complete jurisdiction was acquired over the subject-matter and the parties to the action, and the note in suit was subjected to the power and authority created over it by the statute. And whoever purchased it afterwards from the defendant Sylvester took it as it was affected by the proceedings taken, and subordinated to that authority, even though that rule would not ordinarily be applied to the holder of negotiable paper. (*Leitch* v. *Wells*, 48 Barb., 641, 649; *Hopkins* v. *McLaren*, 4 Cowen, 667–678, 679; Story on the Conflict of Laws [5th ed.], §§ 548, 551.)

A similar point, under circumstances less favorable to the defendants, arose in the case of *Hull* v. *Blake* (13 Mass., 153), where like proceedings which had been prosecuted in the State of Georgia were held to be a bar to an action brought upon notes by a *bona fide* holder for value, who received them before they were due. In the course of the decision of that case, after holding that the notes derived their validity as contracts from the laws of the State of Georgia, it was further held by PARKER, C. J., and concurred in by the court, "that if by the laws of the State of Georgia, in force when these notes were given, they might be discharged by a payment to the original promisee after they were indorsed, and such payment had been actually made, proof of these facts would secure the defendant from a second payment, although it should be demanded by an indorsee who had paid a valuable consideration, and who must

in that case be considered as relying upon his indorser if he should fail in recovering the amount from the promissor. A law providing that any creditor of the promisee may compel the promissor to pay the debt to him, notwithstanding the evidence of its negotiable quality and that it may have been actually negotiated, would have the same effect. Such a provision would be extraordinary and contrary to the effect generally given to negotiable securities in any mercantile country; but, if the law be so, it must have operation on the contract wherever it may be sued, because the laws of the place where the contract is made necessarily make a part of the contract, and are understood as its governing principle." (Id., 156.) The same point was again examined and considered by that court (*Meriam* v. *Rundlett*, 13 Pick., 511), and the preceding decision was approved. But as other property had also been rendered liable to the payment of the judgment, and that of the debtor himself was required to be first exhausted and applied in payment of the judgment, the court held the proceedings which had been taken in the State of Missouri to be a defense only by way of abatement or suspension of the action, until it could be seen whether the makers of the note would be obliged to pay the amount of it there. The same general principle as that which was held in *Hull* v. *Blake* was maintained in *Holmes* v. *Remsen* (20 Johns., 229), but there the debt was not negotiable, and actual payment had been enforced. Also, in *Embree* v. *Hanna* (5 id., 101), where a debt of the same nature had been attached in another State. A like effect was given to a similar principle in *Trubee* v. *Alden* (13 S. C. N. Y. [6 Hun], 75). See, also, 2 Parsons on Bills and Notes, 386–390, where the authorities affecting the exoneration of the makers under circumstances like those presented in this case have been collected and discussed, and the conclusion of *Hull* v. *Blake* sustained. Also, volume 1, 260, where it is stated as the law that, " if the defendant is compelled by due process of law to pay the note to another party, the plaintiff who holds the note cannot recover it of him. Thus, if the paper be not negotiable, and trustee process is served upon the promissor, or if the paper be negotiable, and such process is served in States where it may be served in such cases, the promissor must pay the plaintiff in the trustee process, and this would be a defense if sued by the holder." (2 Parsons on Cont. [6th ed.],

606–608.) That is the necessary effect of the judgment in the State in which it may have been recovered, and under the Constitution of the United States, it is entitled to the same faith and credit from the courts in the other States. (*Wheeler* v. *Raymond*, 8 Cow., 311.)

By the judgment of the court recovered in Florida, the defendants were unqualifiedly required to pay the amount of the note to the plaintiffs in that action. No such contingent liability was created as appeared in *Meriam* v. *Rundlett* (*supra*); and besides that, execution had been issued and properly levied upon under it, which was probably sufficient to satisfy the judgment. The principal defendant was not a resident of the State, and did not appear to have any other property than this debt within it and subject to the process of its courts; and for those reasons, under the authority of *Hull* v. *Blake* (*supra*), a complete defense was shown to the action. But if the contingency that Sylvester might still pay the judgment is entitled to weight in the consideration of the case, the proceedings taken required an abatement or suspension of the action until that should be determined, and that was sufficient to render the direction of a verdict against the defendants as the makers of the note erroneous.

It has been urged that those proceedings should be denied effect, as collusive, because of the change made in the property levied upon, and the return of the note by defendants to Sylvester two days after the service of the writ of garnishment. But as the change in the levy in no way released the defendants or their property from the payment of the judgment against them, and it did not appear that they could have lawfully withheld the note, it having been pledged to them for a special purpose only, it cannot, with any degree of propriety, be now held that the proceedings were collusive for those reasons. That may be made to appear upon another trial of the action by evidence which will justify the jury in adopting that view of the proceedings. But as they now appear to stand, they are not sufficient to prevent a recovery upon the note by the plaintiffs.

There should be a new trial of the action, with costs to abide the event.

Davis, P. J., and Brady, J., concurred.

Motion for new trial granted, costs to abide event.