JEAN F. PEPIN, Respondent, *v.* AUGUSTUS LACHENMEYER and CATHARINE LACHENMEYER, Appellants.

It is not error for the court to exclude an offer of evidence which, with the evidence already given, would be insufficient to establish the fact which it is intended to prove. An offer of testimony is to be presumed to include all that the party proposes to offer in addition to what they have already shown upon the particular issue.

Supreme military control in a city is not incompatible with the existence and authority of courts of civil jurisdiction and procedure there.

A transcript of minutes extracted from the docket of a court, is not admissible in evidence under the act of Congress of 26th May, 1790.

The acts of a *de facto* judge cannot be attacked collaterally, by showing that he has taken no oath of office, or that he has taken an oath to support a power in insurrectionary hostility to the federal government.

The secession of the State of Louisiana, attempted or temporarily effected, did not affect the jurisdiction of the civil courts of the State between, citizens of that State.

(Argued February 9; decided February 21, 1871.)

APPEAL from a judgment ordered by the General Term of the Supreme Court in the first judicial district for the plaintiff, upon the verdict of the jury at the New York circuit; the justice at the circuit having ordered that the exceptions of the defendant be heard in the first instance at the General Term.

This action was brought upon a judgment rendered in the sixth district court of New Orleans, in the State of Louisiana, on the 7th of February, 1863.

The complaint alleges the commencement of the action, the appearance of the defendant, the judgment of the court, and that no part of it had been paid; also, that the court was a court of general jurisdiction, created by the laws of the State of Louisiana. The answer denies the record of the judgment, also that the court was a court of general or any jurisdiction, and alleges that the State was, at the time mentioned in the complaint, in open, armed rebellion against the government of the United States, and claimed to be one of the Confederate States; that one Rufus K. Howell at the time claimed to be judge of said sixth district court under an

election had and commission issued to him under the authority of the State of Louisiana after she became one of the Confederate States; that he took the oath of office as judge, and swore to support the Constitution of the Confederate States ; that the Supreme Court of the State of Louisiana was virtually abolished by the rebellion. The answer also sets forth an executive order of the President of the United States, dated October 20, 1862, reciting the insurrection, etc., and appointing a provisional court and Charles A. Peabody its judge, with power to hear, try and determine all causes, civil and criminal, including such powers· and jurisdiction as belonged to the district and circuit courts of the United States.

The answer also alleged the military occupation of the city by the federal government, and that civil authority had not been restored, and that the action should have been brought in the provisional court, and also contained a general denial.

A certified copy of the judgment in the sixth district court of the city of New Orleans, in favor of the plaintiff and against the defendant, was offered in evidence and received, under objection by the defendant. The certificate of the clerk that the same was a correct transcript of all the proceedings had, documents filed, and evidence adduced on the trial, was attached to the judgment; also a certificate of the judge, to the effect that the court was a court of record, that the signature of the clerk was genuine, and his attestation in due form of law ; also, the certificate of the clerk, with the seal of the court attached, that the court was a court of record, and that the signature of the justice was genuine, etc.

The executive order before mentioned was put in evidence, and evidence was introduced showing that Charles A. Peabody entered upon the duties of judge, under the executive order, in December, 1862, and continued to exercise them till November, 1865. The court excluded evidence offered by the defendant to prove that, during the time Judge Peabody remained at New Orleans, the government of the city was

strictly military, or under the military authority; and the defendants excepted.

The defendants' counsel offered in evidence an exemplified copy of the minutes of the sixth district court of New Orleans; which was objected to by plaintiff's counsel, and the objection sustained.

*A. A. Phillips* and *L. S. Chatfield*, for the appellants.

*J. N. Balestier*, for respondent.

FOLGER, J. This is an action upon a judgment of the Sixth District Court of New Orleans, in the State of Louisiana, rendered in favor of the plaintiff and against the defendants, on the 7th day of February, 1863.

At the trial, at the circuit, the plaintiff offered in evidence a certified copy of the record of the Louisiana court. The defendants objected to its introduction in evidence. But the objection was general, not specifying any particular wherein it was illegal or defective. And though the same objection is made as a point in this court, it is in the same general way. Such an objection is not of any force. But we have looked at the record and the certificates of authentication. It seems to be duly authenticated according to the law of congress in that regard.

The record was received in evidence, and it shows the existence of a court, with a judge, clerk and seal, and it is *prima facie* evidence of the acts of the court as set forth in it, and that it had jurisdiction of the persons and of the subject-matter. (*Mayhew* v. *Thatcher*, 6 Wheat., 129; *Wheeler* v. *Raymond*, 8 Cow., 311; *Thomas* v. *Robinson*, 3 Wend., 268.) This established the judgment in favor of the plaintiff against the defendants, and made out his cause of action against them in the court below, unless they could succeed in impeaching it.

To do this, they put in evidence an executive order of the president of the United States, dated 20th October, 1862,

which, declaring that the insurrection had temporarily sub-
verted and swept away the civil institutions of the State of
Louisiana, including the judiciary and judicial authorities of
the Union, so that it had become necessary to hold the State
in military occupation, and indispensably necessary that there
should be some judicial tribunal existing there, capable of
administering justice; did constitute a provisional court, which
should be a court of record for the State of Louisiana, and did
appoint a provisional judge to hold said court, with authority
to hear, try and determine all causes, civil and criminal, and
whose judgment should be final and conclusive. They showed
that the person appointed judge of this court commenced the
exercise of his judicial functions in December, 1862, and con-
tinued them until in July, 1865.

The defendants then offered to prove by a witness, that
during the period that judge remained in New Orleans,
the government of that city was strictly a military gov-
ernment, or that, at least, it was under military authority.
The court excluded the testimony, and the defendants duly
excepted. We think that the court committed no error in this
ruling. As this was an offer of testimony, and not a question
to a witness, it must be taken as all that the defendants pro-
posed to offer and show, in addition to what they had shown,
upon this issue. All that they had shown, was the issuing
of this executive order, and the exercise of judicial functions
under it. It is to be observed, that though the judicial
power assumed to be conferred by it was general and com-
prehensive, it was not exclusive. And though the order
declared that the civil institutions of the State had been
swept away, it was not conclusive evidence of such fact. Nor
would it, in connection with the fact offered to be proved,
that the city was under military authority, be sufficient to
overcome the evidence that those civil institutions were not
swept away, but that a court was in active existence, issuing
process against persons and property, and obtaining recogni-
tion from citizens and obedience from litigants, which was
furnished by the record which had been placed before the

court.   This showed a court with a formal title, with a judge, clerk, seal, attorneys practicing in it, sheriff, and a regular and formal mode of procedure.   And the certificates showed the same court continuing, in regular existence, until after active insurrection had ceased, and civil order had, ostensibly at least, been restored; and that upon its files and records brought down in regular succession, was found the record of the proceedings and judgment between these parties.   This record showed that this judgment was the ten thousandth and over which this court had given.   It was not a tribunal then lately set up.

If this was all which the defendants proposed to show upon that question, it was clearly insufficient to prove and establish what the defendants had alleged in their answer.

If the testimony had been admitted, it could not have disturbed these facts; and as it seemed to be all which the defendants proposed, the rejection of it was as well, as to admit it and declare it insufficient.   That is to say, the bare fact that the city of New Orleans was under military authority was immaterial, upon an issue whether a civil court alleged to be in existence, and in the exercise of its functions there, was so or not.   There was nothing so incompatible in the co-existence of the two things, as that one being the other could not be; so that merely proving the existence of military authority, did not tend to prove the non-existence of a court of civil jurisdiction and procedure.   The supreme power might be military, and yet there co-exist a judicial power, acting between citizens in the adjudication of their private differences, whose records and judicial proceedings were entitled to faith and credit in other courts in the United States.

The defendant's counsel then offered in evidence an exemplified copy of the minutes of the 6th District Court of New Orleans, containing the commission from the Governor of Louisiana to Rufus K. Howell, as judge of the 6th District Court of New Orleans, bearing date 18th April, 1861, and the oath of office indorsed on the back of it, in which the judge swears to defend the constitution " of the Confederate

States," taken 29th April, 1861.   Upon the plaintiff's objection, the court refused to admit the paper in evidence and the defendants excepted.   It will be observed that the paper offered, was not a copy of the records of the court, but a copy from its minutes.   In *Ferguson* v. *Harwood* (7 Cranch, 408), it is held that a transcript of minutes extracted from the docket of a court, is not admissible in evidence under the act of Congress, 26th May, 1790, although the certificates of authentication are in due form of law.   But the certificates were not in due form.   The certificate of the judge does not state, that that of the clerk *" is in due form of law."* *Smith* v. *Blagge* (1 John. Cases, 238 ; 2d ed. and note b).

But further than this, the person who assumed to act was judge *de facto*, and his acts were valid as between third parties, had he taken no oath of office.   Nor would the fact, if proven, that he took an oath to support a power in insurrectionary hostility to the federal government, of itself, render his acts in a judicial capacity invalid, as between third parties.   Those acts cannot be impeached collaterally.   His title to the office could be questioned only in a proceeding against him directly, or impeached in some proceeding for his own benefit. (*The People* v. *White*, 24 Wend., 520–525 ; *The People* v. *Cooke*, 8 N. Y., 67–89).

The stress of the appellant's argument is this : Louisiana was a State of the Union, but in flagrant rebellion against the federal government ; it had organized a State government in opposition to the national government, in which was included a judicial system ; the court of the 6th Judicial District of New Orleans was a confederate court, established by confederate authority, and hence a nullity as to the United States, for by that power, the Confederate States was not recognized as a separate nation ; if it was a court established by rebels in arms, not recognizing the authority of the United States, it was not a court known to our laws ; it could not be a court of foreign jurisdiction because no such foreign power was acknowledged.   It was, therefore, no court.

But there is assumed here, what is not in the proofs, nor is it in the history of the times ; and that is, that this 6th District Court was established by confederate authority, or by rebels in arms. It was a court of the State of Louisiana. Now the State of Louisiana, at the time of the commencement of the plaintiff's proceedings in that court, and up to the date of the rendition of the judgment, was either a State of the Union, and temporarily disturbed in her normal relations with the national government, by a great insurrection against it ; or it was for that time a conquered country and subject to the will of the conqueror ; that will to be exercised in accordance with the law of nations. It will not be claimed, we think, that the latter was the case. The general purpose of the war was the re-establishment of the national authority, and the ultimate restoration of States and citizens to their national relations, without any view of subjugation by conquest. *The Venice* (2 Wallace, 258).

The proclamation of the President of 16th August, 1861, issued in pursuance of the act of Congress of July 13th, 1861, excepted from its declaration of a state of insurrection, those parts of States, from time to time occupied and controlled by the forces of the United States engaged in the dispersion of the insurgents. Such was the city of New Orleans, during the period covered by the legal proceedings under consideration. And in the succeeding executive proclamation of March, 1863, the port of New Orleans, was by name excepted from the declaration of being in a state of insurrection. The military occupation of the city of New Orleans on which the appellants so much rely, has been held to have been complete as early as on the 6th of May, 1862. (*The Venice, supra.*) But the proclamation of the general commanding, issued on that day, announced that " civil causes *between party and party* will be referred to the orrdinary tribunals." (Parton's Butler, 294.)

It would seem, then, that this military occupation was but the repression of the insurrection, that is, of violent opposi-

tion; and that this being done, the ordinary relations of citizen with citizen, the making of contracts, the enforcing of those made, were not to be interfered with by the military hand, but left to go on in their usual course, and seek the local and usual tribunals.

It has also been held, that the actual secession of the State of Louisiana, attempted or temporarily effected, did not affect the jurisdiction of the courts of the State. (*White* v. *Cannon*, 6 Wallace, 443).

Without entering further into a field, too extensive for our minute exploration, it is sufficient for us to say, that in our view, the 6th District Court of New Orleans was a court of the State of Louisiana; that the rebellion against the national government in which the people of that State were involved, did not annul that court, its power or jurisdiction, but that it continued on in the exercise of them; that its proceedings were valid; that it had jurisdiction of the parties to the judgment sued upon in this action, and the subject-matter of it; and that the judgment it rendered was valid and ought to be enforced in this action.

The judgment of the court below should be affirmed, with costs to the respondent.

All the judges concurring, judgment affirmed.