# James S. Reynolds v. The Continental Insurance Company.

*Agency: Authority: Evidence: Assumption of authority by the agent.* Upon the question whether a party had authority to do an act as agent of another, evidence of the fact that he assumed to do the act cannot be made use of as evidence that the power so assumed actually existed.

*Agency: Authority: Evidence.* Rulings excluding evidence offered to prove agency become immaterial where the agency is afterwards proved by the introduction of the written agreement of agency, which is not disputed.

*Agency: Insurance: Custom: Evidence.* The exclusion of a question put to an agent residing in a different part of the county, requiring him to state as far as he knew what the usual custom was in the county as to insurance agents taking risks in all kinds of property, is not error, where the witness has before stated distinctly what his own practice was and that he knew nothing of the practice at other agencies and that the same companies did not give like powers to all agents. The existence of such a practice at one place could not be inferred from such evidence of its existence at another.

*Insurance: Agency: Special risks: Acting as local agent: Authority.* Where an agent's written commission expressly excludes authority to insure manufactories and other special hazards, the mere circumstance that he acts as the company's local insurance agent, is not tantamount to a declaration by the company that he has authority to insure every kind of property and to exercise unlimited authority as to risks, modes and terms. By itself, it could imply nothing more than authority to insure in the mode required by the company's charter and to take such risks as the policies of the company in common use by its agents would warrant.

*Practice: Exclusion of evidence: Bill of exceptions: Propositions of proof.* To sustain an allegation of error which complains of the exclusion of evidence offered, the bill of exceptions must make it affirmatively appear that the exclusion was error. In submitting a proposition of proof, counsel are bound to be distinct and clear, and the proposition should embody the specific fact or facts in such connection and in such terms as to be apprehended and ruled in the intended sense by the trial judge, and to be examined and applied in the appellate court in the proper light to test the accuracy of the ruling if an adverse one.

*Propositions of proof: Implied meaning.* Where a trial court has excluded a proposition of proof, his decision, if correct as it appeared, cannot be questioned in an appellate court upon the claim of the party who made the offer, that the proposition covered some implied meaning which required a different ruling.

*Propositions of proof: Construction: Acquiescence.* And where the trial judge's construction of the meaning of a proposition of proof is virtually assented to by counsel at the time, the correctness of that construction ought not to be afterwards questioned in the court of review, unless at least the new construction sought to be imposed upon it is one to which it is fairly open.

*General proposition to prove case made by declaration.* A mere general proposition in so many words to make out the case set forth in the declaration, is not one that the court is bound to take into consideration and rule upon as an offer of proof; it is no more than the declaration has already proffered, and in better form.

*Insurance: General proposition of proof: Practice.* Where in an action to charge an insurance company upon an alleged agreement for insurance, claimed to have been made with their agent, the case has failed for lack of proof of authority in the agent to take the specific risk, and the plaintiff has been three times upon the stand as a witness and has testified to the payment of the premium to the agent but that he did not know whether the agent had paid it over to the defendant, the rejection, at the close of the trial, of a general offer to prove by the plaintiff as a witness the necessary facts to entitle him to recover of defendant, etc., and "that they received the money for the insurance and kept it," is not error, where the offer is so presented as fairly to appear rather as a compendious reassertion of positions already ruled, than as a regular offer of proof of facts to make out a case.

*Heard January 23.    Decided April 4.*

Error to Washtenaw Circuit.

*Beakes & Cutcheon,* for plaintiff in error.

If the defendant received the plaintiff's money for the insurance and kept it, as he offered to prove, it was a ratification of the contract. The company could not repudiate the contract while retaining its consideration. At any rate the evidence was admissible to go to the jury, as one of a series of facts which (with others the plaintiff had a right to prove) would tend to show a ratification of the insurance contract. The question here is not whether that fact alone would be sufficient of itself to bind the defendant, but whether it was so utterly immaterial to the issue that the plaintiff could not be harmed by its exclusion.

The plaintiff was allowed, it is true, to show that he paid the insurance premium to the defendant's agent, Kirchhofer, and that the money had never been returned to the plaintiff; but if the defendant denied that to be a sufficient payment to the company, it was competent to show its payment to the company. On the other hand, if the payment to Kirchhofer was a sufficient payment to the company, then we submit that the court erred in taking the case from the jury by the charge. In a controversy between these parties we suppose it to be a fair presumption of law (in the absence of contrary proof) that the agent did his duty by reporting this insurance and by forwarding to the defendant the plaintiff's money, which he obtained while acting, or at least professing to act, in be-

half of the defendant in making an insurance contract the company had the right to make. That Kirchhofer's only relation to this company was that of agent, authorized to receive premiums, and make insurance contracts in its behalf, is perfectly clear. That it was his duty to pay over or account to the company for all insurance premiums received on whatever insurances he made, or undertook to make, on its account as agent, is equally clear.

Courts have gone quite as far in other cases to charge the principal at the suit of third persons on the presumption that in the ordinary course of business the knowledge of the agent would naturally become the knowledge of the principal; and that it may be assumed, *prima facie*, that what would naturally happen between parties in fiduciary relations, did happen. So when a man employs an attorney, whatever may be the special directions, the adverse party and the public have the right to suppose, unless informed to the contrary, that the attorney has the usual powers of an attorney, and the attorney's concessions on the trial, though against the instructions of his client, are binding. So as to brokers and others, the principal, by implication of law, confers upon them the usual powers incident to their occupation.—*Story on Agency*, §§ *106, 94, 85; Nickson v. Brohan, 10 Mod., 109; Andrews v. Kneeland, 6 Cow., 354; Lobdell v. Baker, 1 Met., 195, 202; Gibbs v. Boies, 13 Vt., 208, 214; Laussatt v. Lippincott, 6 S. & R., 386, 393; Chitty on Contracts, 199, 200, marginal paging.*

In this case it will be seen that the general occupation of Kirchhofer was that of an insurance agent, insuring all kinds of property, when appointed by the defendant. The date of the certificate of appointment is June 23, 1874, and he had been engaged in the business over a year prior to July 18th, 1874.

A local insurance agent, with power to insure, or having blank policies to be filled out and issued by him, is a general agent in the sense of the law: *May on Insurance, 126; Carroll v. Charter Oak Ins. Co., 40 Barb., 292; Post v. Ætna Ins. Co., 43 Barb., 251.* The possession of blank policies, signed by the officers of the company, is evidence of a general agency: *Pitney v. Glens Falls Ins. Co., N. Y. Com. of Appeals (Decided in January, 1875), 4 Ins. Law Journal, 776.*

The power of such an agent in a stock company is plenary. He may make such memoranda and endorsements modifying the general provisions of the policy, and even inconsistent therewith, as in his discretion seems proper: *Pitney v. Glens Falls Ins. Co., N. Y. Appeals, 4 Ins. Law Journal, 776, 777.*

Such an agent has an implied authority to alter the printed blanks so as to cover risks which would not otherwise be insured against: *Gloucester Mfg. Co. v. Howard Ins. Co.*, *5 Gray, 501, 502.*

So, too, an agent entrusted with blank contracts of insurance to be filled by him, may by erasures in the printed blanks convert an alternative or conditional contract into an absolute one, and if his want of authority is not known to the assured, the company will be liable: *Dayton Ins. Co. v. Kelly, 24 Ohio St., 345, 356, 359, 365.*

Though printed policies in the hands of the agents provide expressly that they shall not be valid until countersigned by the agent, a policy delivered by such agent as a completed instrument is valid, though not countersigned: *Hibernia Ins. Co. v. O'Connor, 29 Mich., 241; Westchester Ins. Co. v. Earl, 33 Mich., 143.*

In this case, Kirchhofer had in his possession blank policies signed by the proper officers of the company, and was entrusted with the power of filling them. The effect of this was to give him a *carte blanche* to insure any property he pleased, and to write over the official signatures furnished him any form of insurance contract. There is no safety for the puplic under any other construction. In *Lightbody v. North American Ins. Co., 23 Wend., 18,* will be found a case not distinguishable in principle from this.

If the defendant shall claim that the policies were sufficient notice to Reynolds that Kirchhofer was not authorized to insure mills, we answer:

1. It does not appear that the policies that Kirchhofer had at the time of the contract of insurance contained any notice or mention of restricted authority. The policy (Exhibit B) tendered by Kirchhofer *after the fire*, and which Reynolds refused to receive, contained a statement that it should not be valid " unless countersigned by Samuel Kirchhofer, the agent of this company for insurance of property other than manufactories and other special hazards." But this policy was never seen by Reynolds before the fire. In fact it was not drawn until after the fire; and Reynolds had no information that the policies contained any such statement—if, in fact, they did contain it. Exhibit B is therefore immaterial to the case.

2. The company being authorized to insure mills or other special hazards, the delivery of a blank policy signed by the president and secretary (which was adapted as well to the insurance of manufactories as of any other property) to the de-

fendant's sole agent at Manchester, was a sufficient expression of the company's assent, through its chief executive officers, to its being so filled as to insure manufactories, or any property to which the form of policy was adapted. The delivery to any person of a blank policy *so signed*, would confer sufficient authority to bind the company if filled up by him with any description of property, provided only that the countersignature or assent of Kirchhofer should be obtained—assuming, of course, that the assured acted in good faith. There are no words of prohibition to Kirchhofer. The words are merely by way of description, or identification, and it was of course competent for the company to enlarge the powers of an agent originally limited, or to use him as the medium of delivering any kind of policy.

3. An ordinary person in reading the policy, Exhibit B, would understand that it was only essential that *Kirchhofer* should countersign it before delivery, and not as any limitation in the contract, or in the kind of property which such a policy might insure. Any other construction would make it misleading and deceptive. There is no declaration that the policy shall not be valid to insure manufactories and special hazards.

*Ashley Pond,* for defendant in error.

Plaintiff, sworn as a witness on his own behalf, testified that in July, 1874, and prior to that time, one Samuel Kirchhofer, with whom the alleged contract for insurance was claimed to have been made, resided at Manchester, and that his business was that of insurance agent. Witness was then asked: "For what companies was he (Kirchhofer) acting?" The question was objected to by defendant's counsel, and the objection sustained, and this ruling is the basis of the first assignment of error.

I submit that the ruling was correct. If the question is to be construed to mean, for what companies Kirchhofer *purported or appeared* to be acting, the answer could have had no tendency to prove that he was in fact an agent of the defendant corporation. On the other hand, if it is construed to mean, for what companies he was *in fact and by authority* acting, preliminary questions were required for the purpose of showing that the witness had some proper means of knowing. The fallacy of permitting him to answer such a general question without first having given some evidence tending to show his means of knowledge, is clearly demonstrated by his subsequent testimony, from which it appears that he had no such means of knowledge and no knowledge.

The ruling which is the basis of the first assignment of error having been made, counsel for defendant produced a certificate of appointment of said Kirchhofer as agent for the defendant, and the same was put in evidence on behalf of the plaintiff, and a copy is annexed to the bill of exceptions. This appointment bears date June 23, 1874; but it was admitted on behalf of defendant that it was received by Kirchhofer prior to the 18th of July, 1874. By the terms of this appointment Kirchhofer had no authority to make insurance upon the class of property which the declaration alleged to have been covered by the supposed agreement. And plaintiff's counsel thereupon called as a witness one Chauncy H. Millen, who testified that he had resided at Ann Arbor about forty years, and had been an insurance agent over twenty years, and represented five different companies, two for all, and the residue for a portion of that time. In answer to the following question, to-wit: "What has been the usual custom of insurance companies doing business in the county of Washtenaw, so far as you know, as to the issuing of policies—by whom have they been issued, as a general rule upon all classes of property, whether by the company or local agents?" Witness stated: "The general rule of myself has been to issue the policies from my agency." Plaintiff's counsel then put the following question: "Has that been the general custom of insuring in this county, so far as you know?" The question was objected to by defendant's counsel, and the objection sustained, and this ruling is the basis of the second assignment of error.

I submit that the question was properly excluded. The witness testified that the companies which he acted for gave greater authority to some agents than to others, and he subsequently testified that he knew nothing of the custom referred to outside of his own agency.

The fourth, fifth and sixth assignments of error involved the single question whether the court properly refused to permit the plaintiff to show the alleged agreement for insurance made with Kirchhofer, and instructed the jury to render a verdict for the defendant.

I submit that no other course was open. The burden was upon the plaintiff to show the authority of the agent to make the contract counted upon. Of course I do not contend that it was necessary for him to show that such authority had been expressly given. If he could have produced evidence tending to show that Kirchhofer had been held out to the public as having such authority, or had, with the knowledge of the defendant, been permitted, in one or more instances, to

exercise like authority, it would undoubtedly have been admissible; but his case was barren of any evidence that Kirchhofer had ever assumed to act for the defendant corporation in any other transaction than the one in question, and in fact he had never so acted.

The theory which seems to have pervaded the mind of plaintiff's counsel, that insurance agents possess general and uniform powers of which courts are bound to take judicial notice, is clearly unfounded. "No court can have judicial knowledge of the powers of all insurance agents. In order to bind companies for the unauthorized acts of agents, there must be something in the course of the business which the party dealing with them has fairly a right to rely on, and there must have been an honest reliance in fact. In other words, dealing with them must be governed by the same rules applied to other persons:" *Per Campbell, C. J., in Security Ins. Co. v. Fay, 22 Mich., 467.*

The existence and extent of the authority must be proved as a fact: *May on Insurance, § 173; Meister v. The People, 31 Mich., 107.* If the authority is express and in writing, the company cannot be bound by an act of the agent not within such written authority, unless it has so acted or permitted the agent to so act as to justify the public or the plaintiff in believing that the agent has other or greater powers than those given by the written authority: *Farmers' Ins. Co. v. Taylor, 73 Penn. St., 342.*

In this case there is no pretense that Kirchhofer had exercised any authority, with or without the knowledge of the defendant company, inconsistent with the written authority which had been given to him. Plaintiff had no information as to his authority, except Kirchhofer's own oral statements; and if a policy had been issued and delivered to him by Kirchhofer, and he had read it, he would have learned that Kirchhofer was not authorized to make insurance upon property of the character in question.

*Mr. Justice Swayne,* of the Supreme Court of the United States, in deciding a case recently before him on writ of error from the circuit to the district court, remarked that he had learned from experience that a cause when read in print frequently appeared widely different from his understanding of it in manuscript, and the learned counsel for the plaintiff in error in this case seem to have had some such experience, as upon reading the record in print they have discovered, or think they have, a point they deem of great importance to their client, which they wholly overlooked whilst the record

was in manuscript, and have accordingly amended their assignment of errors.

The bill of exceptions purports to be, and probably is, a literal transcript of the short-hand writer's minutes of the trial, and in it appears the following paragraph:

"We now offer to prove by the witness the other facts alleged in the declaration, *not proposing to offer any other evidence on the subject of agency,* but the other facts to entitle us to recover $3,000, with interest from the 4th day of August, 1874, the day of the fire,—that they received the money for this loss and kept it."

By the original assignment of errors the only complaint based upon this part of the record was, that the court refused "to allow the plaintiff's counsel to show the other facts alleged in the declaration (other than the evidence on the subject of the agency of Kirchhofer.)" The assignment as amended complains of the refusal of the court to permit the plaintiff to show that the defendant had received the premium for the alleged insurance in question and kept it.

Of course the only relevancy of evidence to show that the defendant received the premium for the alleged insurance would lie in its tendency to establish a recognition or ratification by the defendant of authority in its agent to make the contract of insurance counted upon. In order therefore, to be of any value to the plaintiff in error his proposition must be construed as an offer of evidence sufficient to authorize the jury to find such recognition or ratification; and this being so, I am not surprised that the learned counsel for the plaintiff overlooked the point now made, in drafting the original assignment of errors, because the fact was well known to be that the insurance company had never done anything which could possibly be construed as a recognition or ratification of the alleged contract of insurance made by the agent, and had never received this premium, and so naturally plaintiff's counsel would not expect to find in the record a proposition to make such proof.

Upon the merits:

1. I submit that the proposition, as it appears in the record, is too vague and indefinite to justify this court in holding that the court below erred in not permitting the plaintiff to make the proof he now assumes that he offered to make.

The entire record shows that the court intended to be and was liberal toward the plaintiff in permitting him to give any evidence which could have any tendency whatever to show authority in the agent to make the contract under considera-

tion. His counsel was permitted time and again to resume and give testimony after obtaining a ruling from the court upon that already in, and to call and recall, and examine and re-examine their client upon the subject of the alleged agency; and the primary and principal proposition contained in the paragraph of the record in which the language under consideration occurs, was to show "*other facts alleged in the declaration*," and not to show other facts to establish the authority, either original or by subsequent recognition or ratification, in the agent, but, on the contrary, expressly disclaiming any intention to "*offer any other evidence on the subject of agency*," so that neither the attention of the opposite counsel nor the court could have at all been attracted to what is now claimed to be the real, material gist and scope of the proposition.

2. And further, I submit that the proposition literally proved would not furnish evidence sufficient to submit to a jury as tending to show that the defendant had recognized or ratified the alleged action of the agent.

The language is, "that *they* received the money for the loss, and kept it." And the context does not show who is meant by the pronoun "they." The proposition literally would be as true if the agent received the money and kept it, as if the defendant received it and kept it.

Moreover, proof that the defendant received the money paid as a premium for the insurance counted upon and kept it, would not be sufficient, standing alone and unexplained, to bind the defendant as recognizing or ratifying the action of the agent. The proposition should have been clear and distinct to show that the defendant, knowing the contract upon which and the circumstances under which the money had come to the possession of the agent, received it from him and retained it.

3. Finally, it does not appear that any exception was taken to the ruling upon the proposition under consideration. The ruling to which an exception was taken was in answer to a subsequent proposition of counsel for the plaintiff in the following language, to-wit: "We offer to prove the other facts to entitle us to recover."

GRAVES, J:

A verdict having been returned by direction of the court against Reynolds, who was plaintiff below, he has brought error.

The action was on an alleged agreement of July 18th, 1874, to insure his interest up to three thousand dollars for one year in a steam mill and its appliances, at Manchester, in Washtenaw county, the property having been destroyed by fire August 3d, 1874, and no policy having been received by him.

He claimed the agreement was made on the part of the company by one Kirchhofer, then its agent at Manchester, and that he paid one hundred and thirty-five dollars as premium.

The insurance company maintained that, conceding Kirchhofer to have been its agent to take common risks, he had no power to take any of the class of plaintiff's, and that if he assumed to agree as alleged, his act was unauthorized, and hence was not a ground of action against it.

Excluding a point now made on the rejection of an offer by Reynolds at the close of the trial, relative to proof, and which will be noticed at the proper time, the record of the trial shows that in the first place Reynolds insisted upon giving evidence of a bargain for the special risk in question, with Kirchhofer, and without any evidence of power in Kirchhofer to make such a bargain; and as ground for maintaining that he was fully justified in regarding Kirchhofer as authorized to bargain for the risk in question, he insisted secondly that he was entitled to prove that there was a practice at other agencies to take such risks; that Kirchhofer was entrusted with policies in blank, signed by the president, and actually solicited the risk and received the premium. These facts, it was claimed, entitled Reynolds to transact with Kirchhofer upon the faith that the latter had power to bind the company by the bargain for the risk in question, notwithstanding the fact, unknown to Reynolds, that the commission and policies debarred Kirchhofer.

The company resisted these claims and contended that before adducing evidence of a bargain with Kirchhofer it was incumbent on Reynolds to prove that Kirchhofer was empowered, and that the practice at other agencies as to the kinds

of risks agents assumed power to take, and the other facts proposed in connection, were without force to sustain the theory on which they were suggested, or to hold the company on the supposed bargain, and hence were inadmissible. This outline will give an idea of the attitude of the parties at the trial.

The court was very indulgent to the plaintiff and allowed great latitude in his various efforts and expedients to get over inherent difficulties. When the trial opened, the plaintiff took the witness stand and having sworn that at and before July 18th, 1874, Kirchhofer acted as insurance agent at Manchester, was then asked by his counsel for what companies he was acting. The question was ruled out and error is assigned upon the ruling. The true object of the question must have been to draw an answer that Kirchhofer was acting for the defendant corporation, and yet it had not been shown that the plaintiff had any other means of knowledge than the very transaction which was in dispute, and surely if Kirchhofer assumed the power the existence of which was the point in issue, his act could not be made use of by the plaintiff as evidence that the power so assumed actually existed.

Immediately after this rejection, plaintiff's counsel put this question: "State whether any agreement or bargain was made for the insurance of your mill property and the fixtures, machinery, etc., contained therein, in behalf of defendant?" and plaintiff at once replied: "Yes, sir, he insured me."

The counsel for defendant then objected that the question did not ask for any bargain with him as agent for the company; that if it did it would be inadmissible until the agency, the authority to make the bargain and agreement, had been proved, and following this objection defendant's counsel produced the commission given by the company to Kirchhofer, and the plaintiff submitted it in evidence. It bore date June 23, 1874, and defendant's counsel admitted that Kirchhofer received it before July 18, 1874. It ex-

pressly excepted from his authority the power to grant policies upon "manufactories and other special hazards," and for the classification of hazards referred to the provisions of the policies of the company. The fact of Kirchhofer's agency was therefore shown at the outset, and there is no plausible ground whatever for the first charge of error. Indeed, the real controversy concerning Kirchhofer's authority was not upon the fact of his being an agent, but upon the extent of his power as agent. That he was actually an agent was not denied.

The next charge of error is founded on the exclusion of a question to the witness Millen.

He was local agent at Ann Arbor for several companies, and had been for many years.

His practice was to take risks on all classes of property. He was aware that his companies gave greater authority to some agents than to others, but he had no knowledge of the course pursued at other agencies. His ability to speak of the practice in this respect was confined to his own agency.

The excluded question required him to state, so far as he knew, what the usual custom was in the county as to agents taking risks on all kinds of property.

As he had already stated distinctly what his own practice was and that he knew nothing of the practice at other agencies, and that the same companies did not give as extensive powers to some agents as to others, the inquiry could only elicit in effect, and most likely in a form calculated to mislead the jury, a repetition of what was the practice at his own agency alone. Again, waiving all questions touching the right to prove that there existed in Manchester a practice to take all risks, and still the practice at that place could not be inferred from the fact of there being such a practice at Millen's agency.—*1 Starkie Ev.,* *618, 619 (mar.), and notes.*

The precise theory which the plaintiff's counsel had in mind at this point is not readily discerned. Surely he

could not have meant to claim that usurpation of power by agents of one concern, and followed by acquiescence of the principal, could be urged as a reason for holding another concern bound for its agent's unauthorized act, and which was not acquiesced in, but repudiated.

As to whether there was any showing whatever of power in Kirchhofer to make the alleged bargain, the case appears clear.

The plaintiff submitted the commission, and that withheld authority in express terms to take his risk.

It was also shown by plaintiff that the company furnished Kirchhofer with blank policies signed by its president. But such of these as there was evidence to explain excluded such risks. There was no evidence that different ones were ever confided to Kirchhofer, or in fact that the company used any others. No facts were adduced tending to show a grant of greater power than the commission gave. Again, there was no evidence of any act of the insurance company tending to show the creation of any apparent power to exceed the commission and insure such property as plaintiff's. There was not a scintilla of proof that Kirchhofer was held out by the company as authorized to do any thing beyond the terms of the written delegation, or that the company had in any instance acquiesced in an act of his in excess. Indeed, it did not appear that in any instance he had previously assumed to insure property excluded by his commission, and certainly it will not be pretended that his own proceedings, the authority of which was the fact in issue, could be brought forward to sustain that side of the issue which asserted the authority. The single circumstance that he was the company's local insurance agent at Manchester, was not tantamount to a declaration of the company that he had power to insure every kind of property and to exercise unlimited authority as to risks, modes and terms. By itself it could imply nothing more than authority to insure in the mode allowed by the company's charter, and to take such risks as the policies of

the company in common use by its agents would warrant, and we have seen that so far as there was evidence the plaintiff's risk was not within the purview of the policies in use.

There was no evidence of the power conferred by the charter.—*Security Insurance Co. v. Fay*, 22 *Mich.*, 467; *Meister v. The People*, 31 *Mich.*, 99; *Mussey v. Beecher*, 3 *Cush.*, 511; *Markey v. Mutual Benefit Life Ins. Co.*, 103 *Mass.*, 78; *Turner v. Quincy Mutual Fire Ins. Co.*, 109 *Mass.*, 568; *Mechanics' Bank v. N. Y. & N. H. R. R. Co.*, 3 *Ker.*, 632; *Adraince v. Roome*, 52 *Barb.*, 399; *Risley v. Ind., B. & W. R. R. Co.*, 1 *Hun*, 202; *De Grove v. Metropolitan Ins. Co.*, 61 *N. Y.*, 594; *Bush v. Westchester Fire Ins. Co.*, 63 *N. Y.*, 531; *Swazey v. Union Manufacturing Co.* (*Sup. Ct. of Conn., Sept., 1875*); *Kornemann v. Monaghan*, 24 *Mich.*, 36; *Farmers' Ins. Co. v. Taylor*, 73 *Penn. St.*, 342.

Hitherto the case has been considered without reference to the point made upon the exclusion of the plaintiff's final offer of proof.

It remains to examine that point.    Does it affirmatively appear from the bill of exceptions that the judge erred in refusing the offer?    Unless it does the charge of error is not sustained.

In submitting propositions of proof it is requisite that counsel should be distinct and clear.    A proposition should embody the specific fact or facts in such connection and in such terms as to be apprehended and ruled in the intended sense by the trial judge, and be examined and applied in the appellate court in the proper light to test the accuracy of the ruling if an adverse one.—*Clay Fire & Marine Ins. Co. v. Huron Salt, etc., Co.*, 31 *Mich.*, 346, 356.

The object is to economize time by getting an admission of the facts or a ruling on their admissibility without the tedious process of examination, and the facts proposed ought to be indicated with sufficient clearness in regard to identity and sense to enable the court and adverse counsel to judge intelligently concerning their admissibility.

Common fairness, as well as the nature of the proceeding, demand this.

If the judge is compelled to rule upon the offer he may possibly go beyond its obvious import and concede an intent not fairly indicated.    This, however, is not to be intended. It must be clearly shown.    He must be supposed to have passed upon the statement in view of what it actually seemed, and in case of exclusion, his decision, if correct when applied to the proposition as it appeared, cannot be questioned in an appellate court upon the claim of the party who made the offer, that the proposition covered some meaning which required a different ruling.

The ruling must be presumed to have been made on the proposition as it appeared, and not on it as it did not appear.

In *Daniels v. Patterson* the court had occasion to consider a question somewhat similar to the present, and *Judge Bronson,* who gave the opinion, observed : "We all know that offers of evidence are usually made in as broad and strong terms as the facts will warrant.    Before a party excepts on account of the rejection of evidence he should make the offer in such plain and unequivocal terms as to leave no room for debate about what was intended.    If he fail to do so, and leave the offer fairly open to two constructions, he has no right to insist, in a court of review, upon that construction which is most favorable to himself, unless it appears that it was so understood by the court which rejected the evidence, and if the meaning of the offer depends upon argument and inference, he must have much the best of the argument before a court of review should reverse the judgment."—*3 Comst., 47.*    See also *Elwell v. Dodge, 33 Barb., 336; First Baptist Church v. Brooklyn Fire Ins., 23 How. P. R., 448; Johnson v. Carnley, 6 Seld., 570, 575, 576; Pepin v. Lachenmeyer, 45 N. Y., 27; Harger v. Edmunds, 4 Barb., 256; Van Buren v. Wells, 19 Wend., 203; Hosley v. Black, 28 N. Y., 438; Wheeler v. Rice, 8 Cush., 205; Weidler v. Farmers' Bank of Lancaster, 11 Sergt. & R., 134; Wright v. DeGroff,*

*14 Mich., 164; Gilbert v. Kennedy, 22 Mich., 117; Albright v. Cobb, 30 Mich., 355.*

In the light of these considerations we may proceed to notice the terms of the plaintiff's proposition and in connection with the course of proceeding. After repeated rulings, which were well warranted, that the alleged bargain with Kirchhofer could not be shown, for the reason that no evidence had been adduced of his power to bargain for plaintiff's risk, the plaintiff took the stand for the third time, and swore that there were other insurances and that the whole amount of premium for all was twelve hundred and fifty dollars; that he paid Kirchhofer for this insurance one hundred and thirty-five dollars, and that the money had not been returned; that he did not know to which of the companies Kirchhofer applied it, and that he might have applied it to this company and might have applied it to some other. Plaintiff's counsel then said: "We now offer to prove by the witness the other facts alleged in the declaration, not proposing to offer any other evidence on the subject of agency, but the other facts to entitle us to recover three thousand dollars, with interest from the fourth day of August, 1874, the day of the fire; that they received the money for this loss and kept it." The judge then observed: "It is not necessary to take up time. I think the ruling before made should govern, if that is all the evidence." Plaintiff's counsel replied: "That is all on the subject of agency." "It is conceded that the other proof is made." The judge responded: "It has been offered once before, and I think it may be governed by the ruling before made." And counsel rejoined: "We offer to prove the other facts to entitle us to recover." Whereupon the judge answered: "It is objected to and the objection is sustained." Plaintiff's counsel thereupon excepted.

The charge of error is, that the court refused to allow the plaintiff to prove that the insurance company received this money for this loss and kept it, and hence ratified the bargain alleged to have been made with Kirchhofer. It

will be noticed, in passing, that although the judge clearly indicated how his mind was directed by the general and ambiguous statements of plaintiff's counsel, and that he regarded them as only amounting to reassertion of claims and theories ruled previously, and not to an offer to adduce facts to make out a case in some other way or on some other theory, still the plaintiff acquiesced in the judge's construction and made no attempt to correct his impression if not right. The charge of error supposes the offer to have meant something else, and that the judge mistook in his understanding of it. There is high authority for saying that the plaintiff cannot question the correctness of the judge's construction, for the reason that it was virtually assented to at the trial.—*Morrish v. Murrey, 13 Mees. & Wels., 52; Boeklen v. Hardenbergh, 60 N. Y., 8.* But the point need not be disposed of on this principle.

An examination of the course taken at the trial and of the proposition make it very apparent in the first place that the judge did not understand the offer in the sense now sought to be imposed on it by the plaintiff, and in the second place that there is no solid ground for considering that it was fairly open to any such meaning.

The main part of it was a proposal in so many words to make out the case set forth.

The declaration had already made this proffer, and in better form. An offer of particulars was required upon which some judgment could be formed.

No hint was given of any ratification, and all further proof relating to agency was disclaimed.

Again, the whole of the evidence suggested was to be made by the plaintiff himself. This was expressly stated. Nothing was proposed from any other source. The offer was distinctly confined to testimony by the plaintiff. And yet, he had just sworn that he knew nothing as to whether the insurance company had or had not received the money paid to Kirchhofer. Indeed, the offer did not propose in terms to prove that the company had received the money. As worded,

the proposition was not distinctly unequivocal. It was capable of being so construed as to be consistent with the fact the plaintiff had sworn to, that the agent, Kirchhofer, had received it; but it could not be very well reconciled with the notion that the plaintiff would swear that the company had received it. Certainly the court could not be expected to understand from the language that plaintiff's counsel proposed to show by the plaintiff, in plain contradiction to what he had distinctly sworn to only a moment previous, that as matter of fact the corporation actually received the money. There was no intimation that the plaintiff had testified under a mistake or that any error had been committed. Considered as an offer of proof, the statement was insufficient, blind and indefinite, and in view of all the circumstances, it would have been remarkable if the judge had accepted it as having the sense and drift now imputed to it on the part of the plaintiff.

As represented in the record, and as it must have looked at the trial, it was natural for the judge to view it rather as a compendious reassertion of positions already ruled, than as a regular offer of proof of facts to make out a case, and there is some reason for thinking that the construction now claimed by the plaintiff for the proceeding was not thought of at the trial at all.

This charge of error must be overruled.

Finally, it is considered clear that no case for the jury was made, and that the judge did not err in directing a verdict for defendant. Had the plaintiff purposed to sue in equity to enforce performance of the alleged agreement, his want of material facts to enable him to set forth a *prima facie* provable agreement against the company on the basis, either of an original authority in Kirchhofer, a subsequent ratification, or matter of estoppel, would have been very conspicuous to him.

The judgment should be affirmed, with costs.

The other Justices concurred.