## THE KING *vs.* AH LIN.

EXCEPTIONS FROM THE DECISION OF JUDD, C. J.

SPECIAL TERM, DECEMBER, 1883.

JUDD, C. J., McCULLY and AUSTIN, JJ.

A Cabinet Minister, who holds the office of Attorney-General *ad interim*, held, following *Rex vs. Kanau*, 3 Hawn., 669, to be *de facto* duly qualified to present an indictment: whether he is Attorney-General *de jure*, will not be considered on motion to quash an indictment drawn by him.

OPINION OF THE COURT, BY AUSTIN, J.

This case comes here on exceptions to the decision of the Court overruling a motion to quash the indictment against the defendant for perjury, on the ground that it was not drawn by a duly qualified Attorney-General or his deputy.

The facts are conceded to be that, in May, 1883, Walter Murray Gibson, Minister of Foreign Affairs, was appointed by the King Attorney-General *ad interim*, in place of Edward Preston, Attorney-General, resigned, and that he held the position and acted as such Attorney-General till the October Term of the Court at Honolulu, when by W. Austin Whiting, his deputy appointed, the indictment was presented, and the motion to quash it was made.

The Court have carefully examined their decision in Banco in *Rex vs. Wm. Kanaau*, 3 Hawn., 669, in which Chief Justice Harris delivered the opinion, and think they are bound by it.

In that case, John S. Walker, Minister of Finance, was appointed Attorney-General *ad interim*, and a motion similar to the motion made in this case was made and denied.

The Chief Justice says: "It is said that the Constitution contemplates that there should be four advisers to the King—Cabinet Officers—and that it is not conforming with the Constitution when two of these offices are held by one person. This may be all very true, and it may be that a prolonged neglect to fill all the offices would be a neglect to perform the duties required by the Constitution in this respect, but it by no means follows that, in case of a vacancy occurring by death or otherwise, His Majesty must fill it up precipitately, without taking time to consider, and that he cannot delegate the authority to act for the time being to another Ministerial officer, or that all or any of the functions of government must be suspended."

We believe this to be a sound exposition of the law.

It follows that Walter M. Gibson was duly appointed Attorney-General by His Majesty, and began to hold the office *de jure*. But it is now said that on this motion to quash the indictment, which is a matter between the King and people and the defendant, and to which Walter Murray Gibson is not a party, the Court by this summary process shall decide that, owing to lapse of time, he has become only Attorney-General *de facto*, and that he shall be ousted from office. We think this cannot be so done.

In *Fowler vs. Beebe et al.*, 9 Mass., 231, 234, Parsons, C. J., says that "Mr. Smith (whose right to hold the office of Sheriff was questioned collaterally) is no party to this record, nor can he be

legally heard in the discussion of this plea; although our decision would as effectually decide on his title to the office as if it were a party. This would be judging a man unheard, contrary natural equity and the policy of the law."

"From considerations like these arises the distinction between holding an office *de facto* and *de jure.*"

"We do not decide whether he is Sheriff *de jure* of the county of Hampden or has intruded himself into the office, but as we are of opinion that he is Sheriff in fact, we hold that is sufficient."

Kent, in his Commentaries, Vol. 3, p. 295, says: "In the case of public officers who are such *de facto*, acting under color of office by an election or appointment not strictly legal, or without having qualified themselves by the requisite tests, or by holding over after the period prescribed for a new appointment, as in the case of sheriffs, constables, etc., their acts are held valid as respects the rights of third persons who have an interest in them, and as concerns the public, in order to prevent a failure of justice."

In Sheehan's case, which was a motion to discharge a man on habeas corpus, who had been convicted, as he claimed, by a Court which was only a Court *de facto*: (122 Mass., 445, 446:) Gray, C. J., decides as did C. J. Parsons in the 9th Mass. case cited, and says, to decide otherwise would be "inconsistent with the convenience and security of the public," and further says: "The appropriate form of trying his right to exercise the office of a justice is by information in behalf of the commonwealth, or perhaps by action against him by the person injured."

See also 9 Mass., 234.

The doctrine of these cases as to officers *de facto* is sustained by a long line of authorities in England and America, and we have found none questioning it.

See *State vs. Carroll*, 38 Conn., 449, 454–458, where Butler, C. J., makes an exhaustive examination of English and American authorities, commencing with the case of the Abbe of Fontaine, reported in the year books in 1431, where it is believed the doctrine was first established and reported, and finds scarcely a case against it from then to the present time.

See *Woodside vs. Wagg*, 71 Maine, 207; *Brown vs. Lunt*, 37

Maine, 423, 433 ; *Pepin vs. Lachenmeyer*, 45 N. Y., 27, 32 ; *Nelson vs. The People,*, 23 N. Y., 294.

These authorities are sufficient on which to overrule the exceptions.

In this case the defendant claims that he has no remedy by *quo warranto*, because the officer is the Attorney-General, and he has charge of moving for that remedy.

We are not called upon to decide now what remedy the defendant might have, but only to decide as to the validity of the remedy here sought. But the cases in 9 and 122 Mass., cited, are authority for saying that the defendant, who is aggrieved, might proceed directly to attack the officer who wrongs him.

We think he would have such a right under the Constitution. The exceptions are overruled.

*W. A. Whiting*, Deputy Attorney-General, for the Crown.

*A. S. Hartwell*, and *Smith & Thurston*, for prisoner.

Honolulu, January 14, 1884.