BUTTLING, Sheriff, v. HATTON et al.

(Supreme Court, Appellate Division, Second Department. March 6, 1900.)

1. SHERIFFS AND CONSTABLES—DEPUTIES—APPOINTMENT.

A deputy sheriff having resigned in December, 1895, another was appointed the next day, who legally qualified and acted as deputy until January, 1896, when the original deputy returned, and the other tendered his resignation, but remained in the office as chief executive clerk. The original deputy was reappointed January 23, 1896, by an instrument signed and sealed, but not filed until May 29, and the oath of office was not taken until June 10, 1896. *Held,* that under Laws 1892, c. 686, §§ 181, 182, providing that every appointment of an undersheriff shall be in writing, under the hand and seal of the sheriff, and filed and recorded in the office of the clerk of court, and that every such undersheriff shall take the oath of office before entering upon his duties, there was no legally appointed undersheriff on the 16th of March, 1896, when one under bond for jail liberties was released by such chief clerk, acting as undersheriff.

2. EVIDENCE—DECLARATIONS.

Declarations of a person performing the duties of an undersheriff, that he was such undersheriff and had charge of all the business, made while transacting no business incident to such position or connected with its duties, are inadmissible.

Appeal from trial term, Kings county.

Action by William J. Buttling, sheriff, against Loftus D. Hatton, Philip Bohner, and William Hatton, on a bond for jail liberties. From a verdict and judgment for defendants, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Hugo Hirsh, for appellant.

Byram L. Winters, for respondents.

HIRSCHBERG, J. On the 7th day of December, 1895, an execution against the person of the defendant Loftus D. Hatton was issued to the plaintiff, as the sheriff of Kings county. On December 16th said defendant gave the plaintiff a bond for the jail liberties, which comprise the entire county, and the defendants Philip Bohner and William Hatton became sureties with the judgment debtor upon such bond. The bond was in the usual form, conditioned that the defendant Loftus D. Hatton should not escape, or go without the liberties of the jail of the county of Kings, as duly established, until he should be discharged by due course of law. The action was on this bond, on the allegation that the defendant Loftus D. Hatton did escape on the 24th day of March, 1896; and the defense litigated was that such escape was voluntary, and the result of the discharge of the said defendant by the plaintiff from confinement within the jail limits on the 16th day of March, 1896. On the trial Hatton testified that on the 16th day of March, 1896, he went to the sheriff's office, where he saw Mr. Robert B. Sedgwick, and that he asked Mr. Sedgwick if his time was up; that Mr. Sedgwick examined some of the books in the office, and then said to him, in substance: "What are you doing here now? Why ain't you in New York? Your time is up;" that he replied, "I haven't heard from my lawyer," to which Sedgwick responded, "Go to New York and attend to your business." This evidence was undisputed, and it necessarily follows that, if Mr. Sedgwick then had authority to speak and act for the plaintiff in the premises, there could be no recovery upon the bond. It appears that Sedgwick was the undersheriff of Kings county at the time of Hatton's arrest. Lewis R. Worth had been undersheriff, but he resigned the position on December 3, 1895, and Sedgwick was appointed the next day, December 4th, and at once qualified by taking and filing the oath of office. The plaintiff testified that Worth's resignation and Sedgwick's appointment in his place were only intended to be temporary, and to cover the period of Mr. Worth's absence abroad. He further testified that Worth returned in January, 1896, whereupon Sedgwick tendered his written resignation of the office of undersheriff, but remained in the sheriff's office as chief executive clerk, and that the plaintiff, on receiving such resignation, did, on January 23, 1896, reappoint Worth undersheriff, by an instrument in evidence, signed and sealed on that day. The prior resignation of Worth was preserved and read in evidence, but Sedgwick's resignation, the plaintiff testified, he had destroyed. Worth's reappointment was not filed until May 29, 1896, and he did not take the oath of office until June 10, 1896.

The statute (Laws 1892, c. 686, §§ 181, 182) provides that:

"Every appointment of an under-sheriff or of a deputy sheriff shall be in writing under the hand and seal of the sheriff and filed and recorded in the office of the clerk of the county; and every such under-sheriff or deputy sheriff shall, before he enters upon the execution of the duties of his office, take the constitutional oath of office."

It follows, therefore, according to the plaintiff's story, that he had no undersheriff qualified to discharge the duties of the office on March 16, 1896, when Sedgwick told Hatton to leave the jail limits, unless Sedgwick continued to perform those duties by an understanding, either express or tacit, which was to continue until Worth should duly qualify. Under these circumstances the learned trial justice very properly submitted to the jury the question of Sedgwick's official status at the time of the escape; instructing them, in substance, that the defendants were entitled to a verdict in case they found either that Sedgwick was in fact undersheriff, or, not being undersheriff, was still vested by the plaintiff with authority to act as such. It is impossible to tell which conclusion the jury reached, but there was evidence to justify either, and, but for the improper admission of evidence of Sedgwick's declarations as to his position in the sheriff's office, the judgment should not be disturbed.

Mr. Baker, the attorney for one of the defendants, testified to a conversation with Sedgwick in the afternoon of March 16, 1896. This was after the discharge, and is no part of the res gestæ. It was not in the course of the transaction of any business incident to the position, or connected with the duties, of undersheriff. In this conversation Mr. Baker testified that Mr. Sedgwick told him that he was undersheriff, and had charge of all the business. He further testified that Sedgwick said he had discharged Hatton from imprisonment, telling him to go where he pleased. All this conversation was received subject to the plaintiff's objection and exception. Sedgwick was in the court house at the time of the trial, but neither side called him. He would, of course, have been a competent witness to prove the scope and extent of the authority conferred upon him by the plaintiff, but his declarations were not competent evidence for that purpose. 2 Greenl. Ev. 63; 1 Rice, Ev. 445 et seq. "It may be laid down as a general principle that the declarations of a person assuming to act as the agent of another are not admissible in evidence to prove his agency." 1 Am. & Eng. Enc. Law (2d Ed.) 690, and cases cited. It is true, it was within the defendants' rights to prove that Sedgwick assumed to act as undersheriff, but in default of his testimony such proof could only be furnished by acts performed as undersheriff, and declarations so connected with and accompanying them as to make them a part of the res gestæ of the acts. But, upon the question whether a party has authority to do an act as the agent of another, evidence of the fact that he assumed to do the act cannot be made use of as evidence that the power so assumed actually existed. Reynolds v. Insurance Co., 36 Mich. 131. Under the charge the jury may have decided that Sedgwick was in fact the undersheriff, and this conclusion would be natural and irresistible, in view of his undisputed declaration to that effect. Without proof of the admission, they might not conclude that he was either undersheriff, or acting as such by authority. The error, therefore, compels a new trial.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.